Roger Dale **GIFFORD, Appellant,**

v.

The **STATE of Texas, State.**

No. 2–86–066–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 28, 1987.

Discretionary Review Refused Feb. 10, 1988.

Patrick A. Myers, Jacksboro, for appellant.

Brock Smith, Dist. Atty., Decatur, for the State.

## OPINION

HILL, Justice.

Roger Dale Gifford appeals his conviction by the trial court for the offense of sale of a child. *See* TEX.PENAL CODE ANN. sec. 25.06 (Vernon Supp.1987). The court assessed his punishment at six years in the Texas Department of Corrections. Gifford presents three points of error. His attorney has certified that the appeal is a frivolous appeal. Mr. Gifford's pro se brief is attached to his attorney's brief, but it does not appear to present any matters that are not raised in the attorney's brief.

We reverse and order a dismissal with prejudice, because we find that the undisputed evidence establishes as a matter of law that Gifford was entrapped.

In point of error number one, Gifford urges that the trial court erred in finding him guilty because he was induced by persons who were acting in accordance with instructions of a law enforcement agent to commit the alleged act. We interpret this point of error as urging that the evidence established the defense of entrapment as a matter of law.

TEX.PENAL CODE ANN. sec. 8.06 (Vernon 1974) provides:

(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or

other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

(b) In this section 'law enforcement agent' includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

*Id.*

■ When evidence supporting the defense of entrapment is admitted, the State must disprove the defense beyond a reasonable doubt. *See Garcia v. State,* 528 S.W. 2d 604, 605 (Tex.Crim.App.1975).

■ Section 8.06 of the Texas Penal Code adopted the "objective entrapment test." *Rodriquez v. State,* 662 S.W.2d 352, 355 (Tex.Crim.App.1984). The objective entrapment test mandates that the trier of fact, having once determined that there was an inducement, need now consider only the nature of the State agent activity involved, without reference to the predisposition of the particular defendant. *Id.*

Dan and Lola Fikes were a married couple who desired to have a child, but who thought that Lola was unable to have one. In July, 1985 they heard "through the grapevine" that Gifford and his wife, Rhonda, had a child whom they wished to put up for adoption. The Fikes searched until they found the Gifford's residence, a small house out in the country near Bryson. They left word as to what they wanted. Rhonda Gifford, Roger's wife, called to let them know that it was all a mistake. About six weeks later, in September, 1985, Rhonda called back and wanted to know if the Fikes were still interested in the adoption and if the Fikes would help them out financially in the amount of $5,000. Lola told her that she did not think they had $5,000, but she would talk to her husband about it. About thirty minutes later, Rhonda called back to say that she had spoken with her husband and that they could come down to $3,500. This amount exceeded unpaid hospital bills occasioned by the birth of the child.

After the Giffords reduced the amount they were seeking, the two couples met on September 9, 1985 in the parking lot of a restaurant.

Lola Fikes testified concerning that meeting. She related that she and Rhonda discussed things about the baby while her husband talked with Roger. She said that she told Rhonda that she had a lawyer and gave her the impression that she was going to take care of the legal affairs.

Lola contacted her attorney after the meeting on September 9th. An attorney in her attorney's office told her that she could not pay anything for the child other than the medical bills. He suggested that she contact the "Welfare Department." Lola then contacted the "Welfare Department," and she was advised to tell the Giffords that she could not pay them any more than Rhonda's hospital bill.

Later in the day, she received a visit from Texas Ranger Phil Ryan. Ranger Ryan told Lola he understood that she and Dan were trying to purchase a child. He had with him a copy of her husband's criminal record.

Ranger Phil Ryan testified that "Child Welfare" had contacted the Fikes and told them not to buy a child under these conditions and to contact the police department. He indicated that the Fikes had planned to make one more contact with the Giffords and then call the police.

Roger Gifford testified that he was very religious and that he trusted Dan Fikes because Dan was assistant pastor of a church. He said that before the child was exchanged for money that he had said, "Dan, I want this done legal or I'm not going to have any part to do with of [sic] it all." Dan had just said, "I've got an attorney already on retainer and if you all will just let us take care of that, if you would, please." Roger said that Dan assured him more than once that he would make sure it was completely legal and that everything looked fine, and they could see nothing wrong with it at all. Roger testified that on September 11th, shortly before the transfer at the restaurant, Dan told him

that everything "was still legal and it would be all right to come into town and do that."

The videotape of the exchange reflects Roger telling Dan, "You have an attorney—You're going to have the papers drawn up and everything."

Dan Fikes did not testify.

■ In order to determine if Roger was entrapped as a matter of law, we must first determine if the Fikes were "law enforcement agent[s]," as defined by section 8.06(b) of the Texas Penal Code. A person acting in accordance with instructions from state law enforcement personnel is a "law enforcement agent" as defined by section 8.06(b). The Texas Court of Criminal Appeals has held that section 8.06(b) requires some type of communication between the law enforcement official and his agent or informant, then action by the informant on this communication. *Soto v. State*, 681 S.W.2d 602, 604 (Tex.Crim.App.1984); *Rangel v. State*, 585 S.W.2d 695, 699 (Tex.Crim. App.1979).

The first area of inquiry should be the specific case at bar. A search must be made to determine if the officer specifically instructed his agent or informant to use an improper procedure to "make a case" against a particular defendant. If such specific instructions are discussed, the entrapment defense is available. *Soto*, 681 S.W.2d at 604; *Rangel*, 585 S.W.2d at 699. It has also been held that there may be situations, such as the repeated use of an informant, in which the police officials have control of a general nature over the informant and have given no improper instruction but have failed to properly instruct their agents. *Soto*, 681 S.W.2d at 604; *Rangel*, 585 S.W.2d at 699.

We find no evidence that Ranger Ryan instructed the Fikes to use any improper procedure in order to make a case against the Giffords. We do find, however, that the undisputed evidence establishes that the Fikes were under the general control of Ranger Ryan, who under the circumstances of this case should have instructed them not to mislead the Giffords as to the legality of the transaction.

■ We hold that *Soto* and *Rangel* do not require that "law enforcement agent[s]" have been used by officers before, but refer to such situations as being examples of a showing of general control.

■ As we have noted, Phil Ryan was a Texas Ranger. When he visited the Fikes' residence, Lola Fikes observed that he had Dan Fikes' criminal record with him. Lola Fikes testified that from the moment of his visit when he said that he understood that she and her husband were trying to purchase a child, she began to cooperate with Ryan. She said that she cooperated with the police authorities at the September 11th meeting.

Ryan testified that Dan and Lola were cooperative after his meeting with them. He said that on September 11th "we" decided to have Dan go to the Gifford residence and tell Roger that they were ready to go through with the matter and to set up the meeting at the restaurant. Ryan said he arranged for his uncle, an agent for the Texas Railroad Commission, to accompany the Fikes as their "Uncle Doug," who was going to provide them with the money to exchange for the baby. Ryan also arranged for a surveillance van and recording equipment.

Since the undisputed evidence shows that the Fikes were acting in accordance with instructions from Ranger Phil Ryan in their dealings with the Giffords from the time of Ryan's initial visit in their home, until the time of the transaction in question, we find that the evidence establishes general control by Ranger Ryan, so that the Fikes, at that time, were law enforcement agents within the meaning of section 8.06(b).

■ The evidence is also undisputed that Dan Fikes represented to Roger that the transaction was a legal transaction, *after Lola Fikes had been informed that it was not a legal transaction.* The only possible reason for Dan to have made such a false representation to Roger would be to make sure that he went ahead with the transaction that was going to be videotape

recorded by law enforcement agents. We find that such representation by a law enforcement agent that a criminal act is a legal act is, as a matter of law, an inducement or persuasion likely to cause other persons to commit the act, unless the act is so inherently criminal in nature that no reasonable person would believe such a representation. Inasmuch as it is not illegal to exchange large amounts of money for a child, if the money is to be used for the enumerated purposes set forth in the Penal Code, the act here would not be so inherently criminal in nature as to preclude a reasonable person from relying on the representation by a law enforcement agent. Since the undisputed evidence establishes that Roger Dale Gifford was induced to commit the offense in question by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense, Roger Dale Gifford was entrapped as a matter of law.

The State urges that the defense of entrapment was not available to Gifford since his defensive theory was that the offense did not occur, relying on the case of *Norman v. State*, 588 S.W.2d 340, 345 (Tex.Crim.App.1979). The Court in *Norman* states, however, that "the defendant who pleads not guilty and who does not take the stand or offer any testimony inconsistent with her commission of the crime would still be entitled to offer a defense of entrapment." *Id.* Since Roger Dale Gifford did not offer any testimony inconsistent with his commission of the offense as charged, he was entitled to the defense of entrapment. *See Melton v. State*, 713 S.W.2d 107, 112 (Tex.Crim.App. 1986).

The State correctly urges that the issue of entrapment is properly resolved by the trier of fact when the evidence is conflicting. However, the State fails to tell us in what respect the evidence is conflicting. The evidence is undisputed with respect to the issue of Ryan's general control over the Fikes' activities, following his initial contact with them, and with respect to the Fikes' representations to Gifford as to the legality of the transaction. We sustain point of error number one. In view of our determination as to point of error number one, it is unnecessary for us to consider the remaining points of error.

We reverse the judgment and remand with instructions to dismiss with prejudice.