IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1222-04






ALEXANDER HERNANDEZ, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


SAN SABA COUNTY





 Cochran, J., delivered the opinion of the unanimous Court.


O P I N I O N 



 Appellant was charged with possession of methamphetamine with intent to deliver
it. After a pretrial evidentiary hearing, the trial judge denied appellant's motion to
dismiss based on entrapment. Appellant then pled guilty, and was sentenced to five
years' probation and a $5,000 fine. He appealed the denial of his entrapment motion to
the court of appeals under Rule 25.2(a)(2)(A) of the Texas Rules of Appellate Procedure.

 The court of appeals reversed appellant's conviction and ordered the case
dismissed because the State "failed to meet its burden to disprove entrapment beyond a
reasonable doubt." (1)

 We granted review to decide whether a trial judge could rationally deny an
"entrapment as a matter of law" motion by concluding that the defendant's testimony was
not credible. (2) Or, put conversely, is the defendant necessarily entitled to prevail in his
"entrapment as a matter of law" motion if the State does not offer affirmative evidence
that directly contradicts a defendant's testimony? We conclude that, under State v. Ross, (3)
a trial judge is not required to believe a defendant's version of events supporting his
entrapment defense, even if it is largely uncontradicted. In this case, a rational trial judge
could find against appellant's "entrapment as a matter of law" defense based upon
disbelief of some or all of appellant's testimony. We therefore reverse the court of
appeals and affirm the trial court's judgment.

I. At the pretrial hearing on entrapment, appellant, who had recently been released from
prison on a prior methamphetamine conviction, (4) testified that he and his neighbor, Chris, first
met Felicia Farr, a confidential informant, at his mother's house. Appellant said that Ms.
Farr walked down the street from her trailer a block and a half away and started talking about
how she had "been to the pen" four times. She was drinking beer and "shooting bull." A
week later she came up to Chris and appellant at his mother's house and offered both of them
oral sex. She drank and "carried on" and asked if they could find some drugs for her. She
came over to appellant's mother's house a lot and asked appellant if he could score her some
drugs- "that was her number one deal." Ms. Farr asked "almost every day." She mainly
wanted methamphetamine.

 Appellant testified that on Valentine's Day she came over and asked appellant to light
her gas heater. She was high on something, but appellant went back to her trailer with her. 
As soon as they reached her trailer, she began fondling appellant and asking him if he wanted
to have sex. Appellant said, "No." She wanted to give appellant oral sex, and she was trying
to pull appellant's "britches" down. He resisted. 

 According to appellant, Ms. Farr asked for some money for beer and, after appellant
obliged her, she went out to buy it. Appellant went back to fixing her heater. When she
returned, she said, "I've got something else," and she pulled out some "dope" and two
syringes. She mixed up the methamphetamine with water in a spoon, and they shared it. She
again said she wanted to give appellant sex. She took a shower and when she came out, she
started "messing" with him, giving him oral sex. Her clothes were off, his clothes were off,
and she was performing when somebody "come knocking-storming in the door-knocking
and just storming in the door." Appellant testified:

 They were out-there was no sign that there were police officers. All it
was is she was giving me oral sex. The dope was sitting right there beside the
bed. And when she heard the boom, boom, boom, she said, oh, God. Oh,
God. She says just stay back here. She goes here, here. Do something with
this. And she grabs the dope and tells me to put it up.

 I said what? She goes put this in your pocket. When they leave we'll
finish what we're doing. And she sits there and tries to shove it in my pocket. 
And I'm sitting there going why? She said let me put my pants on. Somebody
is coming in. They bang on that door. All I remember is they come storming
in. They're already almost in the back bedroom by the time-she didn't let
them in. She didn't -no more than pulled her britches up and they were inside
the door.


When his attorney asked appellant how he ended up with the two methamphetamine packets
in his pants' pocket, he testified:

 Well, under the circumstances her giving me oral sex and it being her
house and her-you know, being right in the middle of that act whenever she
heard the door getting beat on real hard and she grabs the dope and says, here,
do something with this. And puts it in my pocket-I mean she puts it in my
pocket.

 She knew what she was doing. I mean she put it in my pocket to make
me have it on me. She says wait right here. As soon as I get back behind
her-I didn't have my pants on all the way up when she was putting it in my
pocket. I'm sitting here trying to pull my pants up at the same time. I
wouldn't have let her put it in here. It wasn't my-it wasn't my dope. It was
her dope. I should have never even let her attempt it but I-under the
circumstances, I wasn't thinking.


Appellant said that he considered himself an ordinary and law-abiding person of average
resistance to this type of sexual invitation because:

 I had just gotten out of the penitentiary. I had made a promise to myself that
I would stay away from them kind of things, and I was attending church. I was
riding with my mom to Goldthwaite and back every day to work. And I was
doing my darndest to really try to live a good life because I had just gotten
contact visits with my-supervised contact visits with my kids. 


 When his attorney asked appellant to explain all the reasons why he had the
methamphetamine in his pocket that day, he said:

 It was just poor judgment on my half [sic] because I was under the
influence of narcotics and I was in-I was teased by someone offering sexual
favors... By her fondling me and begging me to let her give me head-giving
me a blow job and telling me that she wanted someone to be with her....

 And that's-it was just my not thinking, being messed up and also
wanting her to finish what she told me she would do.


After this testimony, the trial judge agreed with appellant's attorney that "I think you've met
your burden." 

 The State then called Sgt. Simler who testified to a somewhat different scenario. He
said that Felicia Fox was indeed a police confidential informant who had a written contract
with the Narcotics Enforcement Team ("NET") to purchase illegal narcotics "under
supervised buys." She had been working undercover in San Saba for about a month before
this event. (5)

 On the day of appellant's arrest, Sgt. Simler and Sgt. Byler were at a gas station when
they received a call from Ms. Fox. This was not a "scheduled or a documented controlled
purchase," so Ms. Fox had not been searched or "wired" before the meeting. She simply
called the officers and asked them to come over. Based upon the information she gave them,
they drove to her trailer, which was five minutes away. Sgt. Simler knocked on the front
door, and Sgt. Byler covered the back door. Ms. Fox opened the door, and, when Sgt. Simler
asked where the person was, Ms. Fox said, "[H]e's in the back room." Sgt. Simler went to
the back bedroom, but saw no one there. He returned and again asked Ms. Fox where the
person was, and she again told him that he was in the back bedroom. When Sgt. Simler
returned, he saw appellant walk out of the closet. He was fully dressed, and Ms. Fox was
fully dressed. Neither looked out of breath or sweaty; neither had hair in disarray. Sgt.
Simler patted down appellant, found two packets of methamphetamine in his pants' pocket,
and arrested him without incident. 

 On rebuttal, the defense called Sgt. Byler who testified that the officers did not target
appellant. Neither he nor Sgt. Simler knew if Ms. Fox had been in prison. She was
"probably" paid $100 for this "bust" and left San Saba a few days later. Neither the State nor
defense had subpoenaed Ms. Fox, and she did not appear to testify.

 At the conclusion of the testimony, the defense argued that it had raised the defense
of entrapment by offering some evidence, and the State had failed to contradict appellant's
testimony with evidence to disprove the defense beyond a reasonable doubt. The State
argued that: 1) appellant denied committing the offense; 2) he testified that someone else put
the drugs in his pocket; 3) he never testified to any inducement or quid pro quo; 4) the trial
court need not, and ought not, believe appellant's testimony; 5) some of appellant's testimony
was directly contradicted by the officers; and 6) this is not the type of inducement that "the
Court or society should recognize as justifying a ordinary, law-abiding person of average
resistance in violating the law." The trial judge denied appellant's entrapment motion
without comment, and appellant pleaded guilty to five years' probation in accordance with
a pre-arranged plea bargain.

 The Third Court of Appeals reversed appellant's conviction and ordered the
prosecution dismissed. It concluded that "the State offered no evidence to contradict the
assertions that the methamphetamine discovered in this case belonged to a law enforcement
agent and that the agent directly placed it in appellant's pants pocket when their sexual
encounter was interrupted, as arranged by that agent.... [W]e rest our decision on the fact that
the State failed to meet its burden to disprove entrapment beyond a reasonable doubt." (6)

II.


 Some types of criminal conduct, such as the illicit drug trade, present difficult issues
of detection and prosecution because the crime is committed secretly between willing
participants. (7) Thus, law enforcement agents sometimes resort to "encouragement" or
"undercover sting operations" to bring these crimes to light. (8) However, extreme forms of law
enforcement "encouragement" might induce an otherwise law-abiding person to engage in
criminal conduct that, absent the law-enforcement official's inducement, he would not
otherwise have committed. (9) Texas, like other jurisdictions, has enacted the defense of
entrapment to steer between the competing goals of promoting effective law enforcement by
permitting undercover operations and preventing inappropriate and coercive trickery,
persuasion, or fraud by law enforcement officials. (10)

 Under Texas law, when a defendant raises the defense of entrapment at trial, he has
the burden of producing evidence to establish every element of that defense. He must present
a prima facie case that:


 he engaged in the conduct charged;
 because he was induced to do so by a law enforcement agent;
 who used persuasion or other means; and
 those means were likely to cause persons to commit the offense. (11)



Once the defense makes a prima facie showing of each element, the State then has the burden
of persuasion to disprove entrapment beyond a reasonable doubt. In this burden-shifting
context, entrapment acts like a justification defense such as self-defense. 

 Normally, a defense such as entrapment is a question for the jury to decide because
it is determined largely by weighing facts and assessing credibility. (12) The defendant may,
however, raise the legal issue of entrapment to the trial judge in a pretrial hearing under
article 28.01. (13) This "permissible" procedure of trying the entrapment defense prior to trial
"is generally undesirable because it permits the piecemeal trial of a criminal case." (14) 
Presentation of an entrapment defense to the jury is preferred because "the defense of
entrapment is intertwined with the issue of intent and is typically based on credibility
determinations, an area traditionally reserved for jury resolution." (15) Additionally, entrapment
issues are generally considered appropriate ones for the jury "because the jury has a
'particular claim to competence' on the question of what temptations would be too great for
an ordinary law-abiding citizen." (16)

 Nonetheless, in some instances, the facts underlying an entrapment defense may be
undisputed, and the question is one solely of the application of the law to those undisputed
facts. In such a case, a pretrial judicial determination of the existence of an entrapment
defense may be both an effective and efficient use of scarce judicial resources. In this
respect, a pretrial motion asserting "entrapment as a matter of law" is analogous to a motion
for summary judgment in civil case in which, if there is no disputed fact issue, the movant
is entitled to judgment as a matter of law. (17) Although the wording in some of our prior cases
has been inconsistent, a defendant is entitled to dismissal of the charges under section 8.06
in the pretrial hearing context only when he can establish entrapment as a matter of law with
conflict-free, uncontradicted, uncontested or undisputed evidence. (18) If the facts concerning 
entrapment are in dispute, there cannot be entrapment "as a matter of law" determined at the
pretrial stage. (19) It is the defendant, not the State, who must "establish beyond a reasonable
doubt that he was entrapped" at the pretrial stage. (20) At that stage, the State has no burden of
proof; it need only raise a fact issue that a jury would be required to resolve. It is only at the
trial stage that the State has the burden to disprove the factual defense of entrapment beyond
a reasonable doubt. (21)

 Furthermore, we agree with the Fifth Circuit, which has stated that "Generally
speaking, a defendant's testimony cannot by itself establish entrapment as a matter of law
because, absent unusual circumstances, the jury is almost always entitled to disbelieve that
testimony." (22) Indeed, the United States Supreme Court in Masciale v. United States, (23)
concluded that the defendant's undisputed testimony which, if believed, would establish
entrapment as a matter of law, need not be believed (and apparently was not believed) by the
jury. (24)

 When an entrapment defense is presented in either the pretrial or trial context, the
factfinder is authorized "to weigh the evidence and draw a conclusion" as to whether that
evidence establishes entrapment "as a matter of law" in the pretrial context or "as a matter
of fact or law" in the trial context. Any such weighing of the evidence necessarily involves
determining the credibility of the witnesses. A defendant's testimony which is not directly
contradicted at a pretrial hearing may nonetheless be "disputed" because the trial judge, as
the sole trier of fact, is not required to believe that testimony. (25) In such instances, a trial court
does not err in overruling a motion to dismiss. (26) The defendant who has made a prima facie
showing of entrapment may then choose to present that defense to a jury to resolve
evidentiary conflicts.

 In reviewing a trial court's denial of a defendant's pretrial motion to dismiss based on
entrapment "as a matter of law," we determine de novo whether any rational trier of fact
could conclude that the undisputed facts failed to establish all of the elements of entrapment. 
In reviewing a jury's rejection of an entrapment defense, we determine whether, viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the criminal offense beyond a reasonable doubt and also
could have found against the defendant on the issue of entrapment beyond a reasonable
doubt. (27) This review must take into account that "the trier of fact ... not the appellate court
... was free to accept or reject all or any portion of any witness's testimony." (28)

III.


 In the present case, appellant testified that a government agent tempted him with
repeated and urgent requests for both sex and drugs. Listening to appellant's words from the
witness stand, one reasonable trier of fact might well conclude that this was an appalling
example of police misconduct and law enforcement trickery run rampant. Another
reasonable trier of fact might conclude from appellant's words, appearance, demeanor, and
tone that he was indulging in post hoc creativity. This is an instance in which the defendant's
credibility is crucial.

 Is there any other evidence in this record that might raise a question of credibility or
a disputed fact issue? Certainly the fact that appellant had recently been released from prison
for a prior methamphetamine conviction is of some probative value in assessing the
probabilities of whether Ms. Fox "induced" appellant to first inject methamphetamine and
then stuffed two packets of methamphetamine in his pocket. (29) Further, appellant's prior
felony conviction for possession of illegal drugs aids in assessing his witness credibility
under Rule 609 of the Texas Rules of Evidence. And, Sgt. Simler's testimony explicitly or
implicitly conflicts with that of appellant: 


 Sgt. Simler testified that Ms. Fox called him on the phone and, based upon the
information she gave him, he and Sgt. Byler immediately drove to her trailer;
appellant's version neither accounts for this telephone call nor the
awkwardness of Ms. Fox telling the police to come right now and then
disrobing and commencing her sexual activities, knowing that officers were 
on the way;
 
 Sgt. Simler said that he knocked on the front door and waited; appellant
testified that the officers went "boom, boom, boom" and barged right into the
trailer and the back bedroom; 
 Sgt. Simler stated that Ms. Fox, fully clothed, opened the front door; appellant
said that Ms. Fox was frantically trying to clothe herself when confronted right
outside the bedroom door by the officers; 
 According to Sgt. Simler, appellant was fully dressed, and neither he nor Ms.
Fox appeared out of breath, sweaty, or in disarray, and Sgt. Simler did not
testify to any disheveled clothing or bedding; appellant said that he could
barely pull his pants on and was not wearing a shirt or shoes when the officers
came "storming in";
 Sgt. Simler testified that appellant was hiding in the closet when he first went
into the back bedroom; appellant mentioned nothing about being in the closet.

 


 In sum, there is evidence in this record, coupled with reasonable inferences from that
evidence, that raises a disputed fact issue concerning the circumstances under which the two
packets of methamphetamine found their way into appellant's pants' pocket. Under Ross,
a factfinder may disbelieve some or all of a witness's testimony, even when that testimony
is uncontradicted. (30) The same is true under traditional entrapment defense cases. (31) The trial judge's statement that appellant's testimony was sufficient to "carry his
burden" to raise a prima facie showing of entrapment, was simply an acknowledgment that
appellant had offered "some" evidence, however slight, contradicted, or lacking in
credibility, that could support a rational conclusion that he had been entrapped. The fact that
the trial judge ultimately denied his "entrapment as a matter of law" motion was simply an
acknowledgment that appellant had not established his defense beyond a reasonable doubt
with undisputed facts. (32) Appellant could have raised his entrapment defense anew to a jury
and asked it to resolve the disputed facts. In sum, we hold that appellant failed to prove his
"entrapment as a matter of law" defense with undisputed facts, and, therefore, the trial court
did not err in denying his pretrial motion.

 For the foregoing reasons, we reverse the decision of the court of appeals and affirm
the trial court's judgment.

 
Cochran, J.

Delivered: March 2, 2005.

Publish




 


 
1. Hernandez v. State, 149 S.W.3d 761, 769 (Tex. App. - Austin 2004).
2. We granted the State Prosecuting Attorney's two grounds for review:

1) Does the appellate standard of review adopted in State v. Ross, 32 S.W.3d 853 (Tex. Cr.
App. 2000), apply to an appellate court's review of a decision by the trial court denying a
pretrial motion to dismiss on grounds of entrapment?

2) Did the court of appeals err by failing to sustain the ruling by the trial court on a theory
applicable to the case-i.e., that the trial court could have found the evidence relating to
entrapment not to be credible?
3. 32 S.W.3d 853, 858-59 (Tex. Crim. App. 2000) (upholding a trial court's ruling
granting a motion to suppress on the basis that the trial court might have completely disbelieved
the testimony of the State's witness, even though that testimony was uncontroverted).
4. Appellant stated that he had also been convicted of carrying an unlawful weapon,
possession of marijuana, and criminal non-support. 
5. According to Sgt. Simler, Ms. Farr had been working as a confidential informant for the
NET for two to three years and came to San Saba in January specifically for a short-term
undercover "buy" operation. Sgt. Simler testified that Ms. Fox was permitted only to purchase
drugs; she was never given methamphetamine to deliver to others. The NET paid the rent for her
trailer, but, because she was not his agent, Sgt. Simler was not aware of how many buys she had
made or how much she had been paid. Sgt. Simler had last had contact with Ms. Fox two days
before appellant's arrest when she had made a controlled buy for his partner, Sgt. Byler.
6. Hernandez, 149 S.W.3d at 769.
7. See 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, Criminal Procedure §
5.1, at 399 (2d ed. 1999).
8. Id. at 399-400.
9. Id.
10. See Sorrells v. United States, 287 U.S. 435, 441-46(1932) (discussing the history and
rationale of entrapment defense). The Supreme Court explained:

 It is well settled that decoys may be used to entrap criminals, and to present
opportunity to one intending or willing to commit crime. But decoys are not
permissible to ensnare the innocent and lawabiding into the commission of crime.
When the criminal design originates, not with the accused, but is conceived in the
mind of the government officers, and the accused is by persuasion, deceitful
representation, or inducement lured into the commission of a criminal act, the
government is estopped by sound public policy from prosecution therefor.

Id. at 445 (quotations and citations omitted). See generally Rebecca Roiphe, The Serpent
Beguiled Me: A History of the Entrapment Defense, 33 Seton Hall L. Rev. 257 (2003);
Michael A. DeFeo, Entrapment as a Defense to Criminal Responsibility: Its History, Theory and
Application, 1 U.S.F. L. Rev. 243 (1967).
11. Tex. Pen. Code § 8.06(a); see generally, England v. State, 887 S.W.2d 902, 913-14
(Tex. Crim. App. 1994). In England, this Court held that the entrapment defense has both
subjective and objective elements. The subjective element requires evidence that "the accused
himself was actually induced to commit the charged offense by the persuasiveness of the police
conduct." Id. at 913 n.10. Evidence that a person has committed a crime before is some evidence
that a subsequent commission of the crime was not induced by police. Id. at 914. "Once
inducement is shown, the issue becomes whether the persuasion was such as to cause an
ordinarily lawabiding person of average resistance nevertheless to commit the offense." Id. With
respect to this objective element, prohibited police conduct can include pleas based on extreme
need, sympathy, pity, or close personal friendship, offers of inordinate sums of money, and other
methods of persuasion that are likely to cause the otherwise unwilling person-rather than the
ready, willing and anxious person-to commit an offense. Id.
12. See Melton v. State, 713 S.W.2d 107, 113 (Tex. Crim. App. 1986). In Melton, this
Court stated:

 Normally, the factual issue of entrapment is a question for the jury, unless as a
matter of law the accused has established beyond a reasonable doubt that he was
entrapped. Where the evidence on the issue of entrapment is in conflict, the issue
should be submitted to the jury.

Id.; Redman v. State, 533 S.W.2d 29, 31 (Tex. Crim. App. 1976) ("It appears to be well
established that the factual issue of entrapment is a question for the jury, unless as a matter of law
the accused has established beyond a reasonable doubt he was entrapped") (citations omitted);
McKelva v. State, 453 S.W.2d 298, 299 (Tex. Crim. App. 1970) ("Unless an accused has
established as a matter of law that he was entrapped, the factual issue is a question for the jury
when the evidence raises an issue as to whether the intent to commit the crime originated in the
mind of the accused or in the officer's mind"); Powers v. State, 737 S.W.2d 53, 55 (Tex.
App.-San Antonio 1987, pet. ref'd) ("It is a well established rule that the factual issue of
entrapment is a question for the jury, unless as a matter of law the accused has established
beyond a reasonable doubt he was entrapped"); Mustard v. State, 711 S.W.2d 71, 76-77 (Tex.
App.-Dallas 1986, pet. ref'd) ("Unless the accused has established beyond a reasonable doubt
that he was entrapped, the issue of entrapment is a question for the trier of fact"). In Bush v.
State, 611 S.W.2d 428, 430 (Tex. Crim. App. 1980) (panel op.), a panel plurality of this Court
stated that the State had the burden of persuasion to disprove entrapment beyond a reasonable
doubt even in a pre-trial hearing. On en banc rehearing, the original panel opinion was
superceded, but the original opinion was never even mentioned. 611 S.W.2d at 432 (Tex. Crim.
App. 1981) (en banc) (op.on reh'g). 

 Our state's reticence to decide the factual issue of entrapment by means of a pretrial
motion is in accord with federal entrapment law. See, e.g., Mathews v. United States, 485 U.S.
58, 63 (1988) ("The question of entrapment is generally one for the jury, rather than for the
court"); United States v. Kurkowski, 281 F.3d 699, 701 (8th Cir. 2002)("to show entrapment as a
matter of law, the evidence must clearly show the government agent developed the criminal plan
and that the defendant was not predisposed to commit the crime independent of the government's
activities"); United States v. Tucker, 133 F.3d 1208, 1217 (9th Cir. 1998)( "To establish
[inducement] as a matter of law, the defendant must point to undisputed evidence making it
patently clear that [the government induced] an otherwise innocent person ... to commit the
illegal act by trickery, persuasion, or fraud of a government agent"); United States v. Lampley,
127 F.3d 1231, 1243 (10th Cir. 1997) ("Entrapment as a matter of law exists only when there is
undisputed evidence which shows conclusively and unmistakably that an otherwise innocent
person was induced to commit the act") (internal quotations omitted); Coronado v. United States,
266 F.2d 719, 721 (5th Cir. 1959) ("entrapment is a jury question unless evidence is so clear and
convincing that the matter can be passed on by the court as a matter of law"). 
13. Tex. Code Crim. Proc. art. 28.01, § 1(9).
14. Bush v. State, 611 S.W.2d 428, 432 n.1 (Tex. Crim. App. 1981) (en banc) (op. on
reh'g) (further stating that although article 28.01 "allows such a procedure, it is not required; a
trial judge may refuse a pretrial hearing, and the defendant may then present his evidence when
the case is tried on its merits").
15. United States v. Fadel, 844 F.2d 1425, 1430 (10th Cir. 1988).
16. 2 LaFave, § 5.3(c), at 421 (citations omitted). The defense of entrapment, the
Supreme Court has explained, "was not intended to give the federal judiciary a 'chancellor's
foot' veto over law enforcement practices of which it did not approve." United States v. Russell,
411 U.S. 423, 435 (1973). What one trial judge or group of appellate judges may find
"overzealous law enforcement" techniques, a citizen-juror may find appropriate and necessary
weapons in the police arsenal. Id. Or vice-versa.
17. See Tex. R. Civ. P. 166a(c).
18. See Melton, 713 S.W.2d at 113 (when evidence on issue of entrapment is "in conflict,"
the issue is decided by the jury); Redman, 533 S.W.2d at 32; United States v. Jones, 231 F.3d
508, 516 n.4 (9th Cir. 2000) (unless evidence is "undisputed," defendant cannot establish
entrapment as a matter of law).
19. See id.
20. Melton, 713 S.W.2d at 113. Refer to note 12, supra.
21. We note that some lower courts, including the court of appeals in this case, have
inadvertently misstated the State's trial burden of proof as being the burden of proof at the
pretrial stage. See, e.g., Hernandez, 149 S.W.3d at 769 ("we rest our decision on the fact that the
State failed to meet its burden to disprove entrapment beyond a reasonable doubt").
22. United States v. Rodriguez, 43 F.3d 117, 127 (5th Cir. 1995) (internal quotations
omitted); see also United States v. Mora, 994 F.2d 1129, 1137-38 (5th Cir. 1993) (although
government did not introduce any evidence directly contradicting defendants' stories about
undercover agent's threats, there was evidence that cast doubt upon their credibility).
23. 356 U.S. 386 (1958).
24. Id. at 388 (jury was entitled to disbelieve defendant's uncontradicted testimony as to his
persuasion by informant who did not testify; thus jury could reject entrapment defense even
though raised by defendant's testimony).
25. State v. Ross, 32 S.W.3d at 857 ("[a]s the sole trier of fact and judge of credibility, the
trial court was not compelled to believe the [witness's] testimony, even if uncontroverted, based
on credibility and demeanor").
26. See Cook v. State, 646 S.W.2d 952, 952 (Tex. Crim. App. 1983).
27. See generally, Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992)
(discussing standard of review of the sufficiency of the evidence to reject a defense).
28. Id. This deference to the factfinder's role in assessing credibility applies not only to
jury verdicts, but, as we held in Ross, to pretrial factual determinations by the trial judge. 32
S.W.3d at 855.
29. See England, 887 S.W.2d at 913-14 (evidence of defendant's prior drug sales
admissible to show he was not "induced" to commit crime by police agent's persistent conduct). 
Refer to note 11, supra.
30. 32 S.W.3d at 857.
31. Masciale, 356 U.S. at 388; Rodriguez, 43 F.3d at 127; Redman, 533 S.W.2d at 32
("[t]he jury chose to reject the testimony of the appellant on the issue of entrapment. That was
their prerogative").
32. Refer to note 12, supra.