Opinion issued March 1, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00414-CR

———————————

Kimberly Evette
Butler, Appellant

V.

The State of Texas, Appellee



 



 

On
Appeal from the 230th District Court

Harris
County, Texas



Trial Court Case No. 1244182

 



 

MEMORANDUM OPINION

Appellant, Kimberly Evette
Butler, was charged by indictment with attempted theft of property valued at
$200,000 or more.[1]  Appellant pleaded not guilty.  The jury found her guilty and assessed
punishment at 80 years’ confinement.  In
two issues, appellant argues (1) the evidence was legally insufficient to
support her conviction and (2) the trial court erred in denying her motion for
dismissal based on entrapment.

We affirm.

                                                                                                       
Background

Appellant presented two fraudulent bills of exchange, each
with the face value of 5 billion dollars, to a Wells Fargo bank in Dallas,
Texas.  The documents were transferred to
another Wells Fargo bank in Houston, Texas for processing.  

The documents were determined to be fraudulent.  The coloring differed between the two
documents, though they should have been uniform.  The documents were guaranteed twice by the
United States government, though they should have only been guaranteed
once.  Certain coding information
appeared at the bottom of them that would not appear on a bill of
exchange.  Only one had an original
stamp.  The account domain payer was
identified as both the U.S. Secretary of Treasury and U.S. Secretary of
Transportation, though the Department of Transportation is not involved in
bills of exchange.  

The payee on the documents was identified as Jonathan Todd
Clinard. 
Documentation provided in support of the bills of exchange identified Clinard as a man with assets in excess of 2.8 trillion
dollars.  The testimony at trial
established that it should have been easy to find information on a trillionaire with a simple internet search.  The passport number given for Clinard was for an individual living in the state of
Washington who had been arrested multiple times for driving while
intoxicated.  Otherwise, no other
information could be found for this person.

After the bills of exchange had been transferred to
Houston, appellant came to the Houston office with Bernard Mitchell.  Appellant indicated that she wanted to set up
a new bank account to deposit the money from the bills of exchange.  She was not able to set up a new account because
she did not pass their risk-screening process. 
At the time, appellant had another account open with Wells Fargo for a
business identified as Asian Horizon General Trading.  Appellant was the only signer for that
account.  

At that meeting, appellant presented a business card
identifying herself as the president and CEO of the company.  The website listed on the card did not
exist.  The card listed two phone
numbers.  One was disconnected.  The other was answered by a male who refused
to identify himself and then hung up.

When the bills of exchange were determined to be fraudulent,
they were turned over to Carlos Zepeda, a fraud investigator for Wells
Fargo.  Appellant called multiple times
to check on the status of the bills of exchange and was referred to Zepeda,
posing as a processor for the bills.  One
telephone conversation began with appellant saying, “This is Ms. Butler and I’m
calling about my ten Bs.”

Zepeda contacted Special Agent J. Breedlove with the U.S.
Secret Service.  After investigating the
matter, Special Agent Breedlove asked Zepeda to assist in a sting operation for
appellant.  Under the plan, Zepeda
arranged a meeting with appellant and Mitchell on December 10, 2009 at the
Houston Wells Fargo office.  He asked
appellant to come to the office to discuss the transaction.

On that day, Zepeda took appellant and Mitchell into a
conference room at the bank.  The meeting
took about one hour.  Zepeda began by
asking for information about her company, Asian Horizon General Trading.  Even though she was president and CEO of the
company, appellant was unable to answer most questions and turned to Mitchell
for him to answer.  Appellant acted
nervous, worried, and scared during the meeting, stuttering frequently when
asked questions.

At the end, the conversation turned to depositing the
money, and appellant became more confident. 
She was adamant that the money be made available for withdrawal the next
day.  Zepeda had appellant endorse the
bills of exchange and sign two collection item receipts, which indicated that
she could verify the final endorsement on the bills of exchange.  Appellant signed and presented the documents
to Zepeda.

Once he obtained the signatures, Zepeda left the
conference room and Breedlove entered and arrested appellant.

After the sting operation, Special Agent Breedlove
obtained an email from appellant’s husband to appellant and Mitchell.  Appellant’s husband stated in the email,
“Here are a few points about Asian Horizon General Trading Company that we
should know and remember.”  The points
included when Asian Horizon was created, who Clinard
was, what the money will be used for, where the corporate headquarters will be
located, and the identity of their legal representative—with an instruction to
tell Wells Fargo that he had tried to contact them this morning and wants them
to call him.  While the legal
representative was a real person, he denied having any involvement in the
purported transaction.

                                                                               
Sufficiency of the Evidence

In her first issue, appellant argues the evidence was
legally insufficient to support her conviction.

A.            
Standard of Review

This Court reviews sufficiency-of-the-evidence challenges
applying the same standard of review, regardless of whether an appellant
presents the challenge as a legal or a factual sufficiency challenge.  See
Ervin v. State, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010,
pet. ref’d) (construing majority holding of Brooks v. State, 323 S.W.3d 893 (Tex. Crim.
App. 2010)).  This standard of review is
the standard enunciated in Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  See id.
 Pursuant to this standard, evidence is
insufficient to support a conviction if, considering all the record evidence in
the light most favorable to the verdict, no rational fact finder could have
found that each essential element of the charged offense was proven beyond a
reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; In re Winship,
397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750
(Tex. Crim. App. 2007).  We can hold
evidence to be insufficient under the Jackson
standard in two circumstances: (1) the record contains no evidence, or merely a
“modicum” of evidence, probative of an element of the offense, or (2) the
evidence conclusively establishes a reasonable doubt.  See Jackson, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786,
2789 n.11; see also Laster,
275 S.W.3d at 518; Williams, 235
S.W.3d at 750.

The
sufficiency-of-the-evidence standard gives full play to the responsibility of
the fact finder to resolve conflicts in the testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  An appellate court presumes that the fact
finder resolved any conflicts in the evidence in favor of the verdict and
defers to that resolution, provided that the resolution is rational.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793.  In viewing the record, direct and
circumstantial evidence are treated equally; circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt.  Clayton,
235 S.W.3d at 778.  Finally, the “cumulative force” of all the
circumstantial evidence can be sufficient for a jury to find the accused guilty
beyond a reasonable doubt.  See Powell v. State, 194
S.W.3d 503, 507 (Tex. Crim. App. 2006).

B.            
Analysis

Appellant argues that the evidence is legally insufficient
to support her conviction because there is no evidence of her intent.  Specifically, she argues there is no evidence
that she knew the documents were fraudulent.

Section 15.01 of the Texas Penal Code provides, in
relevant part, “A person commits an offense if, with specific intent to commit
an offense, he does an act amounting to more than mere preparation that tends
but fails to effect the commission of the offense intended.”  Tex. Penal Code Ann. § 15.01(a)
(Vernon 2011). 
Section 31.03 provides, in relevant part, “A person commits an offense
if he unlawfully appropriates property with intent to deprive the owner of
property.”  Id. § 31.03(a) (Vernon Supp. 2011).  

“[B]oth intent and knowledge may
be inferred from circumstantial evidence and proof of a culpable mental state
almost invariably depends on circumstantial evidence.”  Tottenham v. State, 285 S.W.3d 19,
28 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing Dillon v. State, 574 S.W.2d 92, 94 (Tex.
Crim. App. 1978)).  Intent may be
inferred from circumstantial evidence such as the acts, words, and conduct of
the accused.  Wolfe v. State, 917 S.W.2d 270, 275
(Tex. Crim. App. 1996).

Five-billion-dollar bills of exchange are not commonly encountered
documents.  One of the Wells Fargo
employees that testified, Ryan Norris, stated that in his over five years at
the bank, he had never encountered someone trying to deposit such a large
amount of money.  It strains credulity to
suggest that someone could come in possession of bills of exchange for such a
large amount without knowing their origin and having some basis to believe in
their authenticity.

In support of that, the record shows that appellant never
indicated any uncertainty as to the documents’ origins or authenticity.  Instead, she demonstrated a firm belief that
the money identified in the bills was hers, including calling Wells Fargo and
asking about “my ten Bs.”  The evidence also shows that appellant was
working with a group actively involved in attempting to create an elaborate
fake back story and fake documentation to support the bills of exchange.  Appellant represented herself as president
and CEO of a company that she could demonstrate almost no knowledge of.  Her business card included a nonexistent
website and wrong phone numbers.  Her
demeanor at the December 10 meeting was nervous, worried, and scared,
suggesting that she was aware of the falsity of the scheme.  

We hold that there was legally sufficient evidence in the
record to support a determination that appellant knew the documents were
fraudulent and, accordingly, intended to unlawfully appropriate property with
the intent to deprive the owner of the property.  See
Tex. Penal Code Ann. § 31.03(a).  We overrule appellant’s first issue.

                                                                                                        
Entrapment

In her second issue, appellant argues the trial court
erred in denying her motion for dismissal based on entrapment.  First, we must review the procedural posture
of this issue.

A.            
Procedural Posture

Under Texas law, entrapment is a defense to
prosecution.  Tex. Penal Code Ann. § 8.06(a) (Vernon 2011).  At trial, if the defendant presents a prima
facie showing of entrapment, the burden shifts to the State to disprove
entrapment beyond a reasonable doubt.  Hernandez v. State, 161
S.W.3d 491, 498 (Tex. Crim. App. 2005). 
The defendant may also raise the legal issue of entrapment in a pretrial
hearing.  Id.; see also Tex. Code Crim. Proc. Ann. art. 28.01,
§ 1(9) (Vernon 2006) (listing entrapment as matter that can be determined
at a pretrial hearing).  In that
circumstance, however, the burden rests on the defendant to establish beyond a
reasonable doubt that he was entrapped.  Hernandez, 161 S.W.3d
at 499.  Because the procedural
posture of the claim of entrapment affects who had the burden of proof and, in
turn, our review on appeal, we must resolve how this matter was presented to
the trial court.

Appellant filed a pretrial Motion to Dismiss Based on
Entrapment.  In the motion, she indicated
that she wanted to present the motion at a pretrial hearing.  That pretrial hearing never took place,
however.

After the State rested on its case in chief, appellant
announced an intent to move for directed verdict and
the trial court retired the jury.  The
following exchange then occurred:

[Appellant’s Counsel]:     Your Honor, I filed a pretrial motion with a motion for directed
verdict.

THE COURT:        You
can orally make your motion. That’s fine.

Appellant then argued her motion based on the
evidence that had been presented at trial and asserted that once she had
presented some evidence, the burden shifted to the State.  Both parties and the trial court then
discussed whether the motion should be granted based on the evidence presented
at trial.  Ultimately, the trial court
denied the motion.

No pretrial hearing on the motion was ever held.  The evidence argued by the parties and
considered by the trial court was the evidence presented at trial.  We hold that the trial court’s ruling on
appellant’s motion was not a ruling on a pretrial motion but, instead, was a
ruling on a motion for directed verdict based on the evidence presented at
trial.  Accordingly, appellant bore the
burden to present a prima facie showing of entrapment and, if that burden was
met, the burden of proof then shifted to the State to disprove entrapment
beyond a reasonable doubt.  See id. at 498.

B.            
Standard of Review

  When conflicting
evidence exists on the issue of entrapment, the trial court does not err in
overruling a motion to dismiss.  Cook v. State, 646 S.W.2d 952, 952 (Tex.
Crim. App. 1983).  The trial court, as
the trier of fact, must weigh the evidence and determine whether the defendant
was entrapped as a matter of law.  Soto v. State, 681 S.W.2d 602, 604 (Tex.
Crim. App. 1984); Bush v. State, 611
S.W.2d 428, 430–31 (Tex. Crim. App. 1980). 
On review, the issue of entrapment centers on the legal sufficiency of
the evidence.  Flores v. State, 84 S.W.3d 675, 681 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d). 
The sufficiency of the evidence turns on whether, viewing the evidence in
the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt and
also could have found against the defendant on the issue of a defense beyond a
reasonable doubt.  Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992)
(citing Saxton v. State, 804 S.W.2d
910, 914 (Tex. Crim. App. 1991)).

C.            
Analysis

Section 8.06 of the Texas Penal Code provides, in part: 

It is a defense to prosecution that the actor engaged in
the conduct charged because he was induced to do so by a law enforcement agent
using persuasion or other means likely to cause persons to commit the
offense.  Conduct merely affording a
person an opportunity to commit an offense does not constitute entrapment.

Tex. Penal Code Ann. § 8.06(a).  When a defendant raises the defense of
entrapment, she must raise prima facie evidence that (1) she engaged in the
conduct charged; (2) because she was induced to do so by a law enforcement
agent; (3) who used persuasion or other means; and (4) those means were likely
to cause persons to commit the offense.  Hernandez, 161 S.W.3d
at 497.  

The entrapment defense has both subjective and objective
elements.  Id. at 497 n.11 (citing England
v. State (T. England), 887 S.W.2d
902, 913–14 (Tex. Crim. App. 1994)). 
“The subjective element requires evidence that ‘the accused himself was
actually induced to commit the charged offense by the persuasiveness of the
police conduct.’”  Id. (quoting T. England,
887 S.W.2d at 913 n.10).  Once inducement is shown, the issue becomes
an objective test of “whether the persuasion was such as to cause an ordinarily
lawabiding person of average resistance nevertheless
to commit the offense.”  T. England, 887 S.W.2d
at 914.

Appellant argues that “once [the] trier of fact determines
that there was inducement to commit [a] criminal act, [the] court must consider
only [the] nature of [the] State agent’s activity without any reference to
[the] previous disposition of [the] particular defendant to commit [the]
crime,” relying on England v. State (R. England), 729 S.W.2d 388, 391 (Tex.
App.—Fort Worth 1987, pet. ref’d).  Regardless of whether predisposition to
commit the crime is relevant after
police inducement has been found, it is relevant to the determination of police
inducement.  See Hernandez, 161 S.W.3d at 497 n.11 (holding “evidence that a
person has committed a crime before is some evidence that a subsequent
commission of the crime was not induced by police”).

Nevertheless, there is no evidence in the record that
appellant had committed or attempted to commit theft before.  Accordingly, these cases do not apply to
appellant.

More applicable to this case is whether the criminal
design originated with appellant.  “The
issue of entrapment is not raised where the facts only indicate that the
criminal design originates in the mind of the accused and the law enforcement
official or their agents merely furnish opportunity for or aid the accused in
the commission of the crime.”  Reese v. State, 877 S.W.2d 328, 333
(Tex. Crim. App. 1994); see also Adams v.
State, 270 S.W.3d 657, 662 (Tex. App.—Fort Worth 2008, pet. ref’d).

The fraudulent bills of exchange were created before Wells
Fargo or the Secret Service became involved. 
Appellant possessed them and gave them to Wells Fargo in an attempt to
obtain 10 billion dollars from Wells Fargo. 
Appellant made repeated calls before the sting operation asking about
the progress of obtaining the money, referring to the money as her “ten Bs.”  Her demeanor at
the December 10 meeting suggested she was aware of the fraudulent nature of the
documents.  There is evidence in the
record, then, to show that the criminal design originated with appellant.  Because the criminal design originated with
appellant, it follows that she was not induced to commit the charged offense by
the persuasiveness of the police conduct. 
See Hernandez, 161 S.W.3d at
497 n.11 (holding subjective element requires evidence that accused herself was
induced to commit offense by persuasiveness of police conduct); Reese, 877 S.W.2d at 333 (holding no
inducement when criminal design originates in mind of accused and law
enforcement officials merely furnish opportunity for or aid in commission of
crime).

Appellant argues that Zepeda’s arranging the meeting and
giving the documents to her to sign was, at the very least, an implicit
representation that the documents were authentic.  She argues that this representation was what
induced her to commit the crime.  In
support of this argument, at trial and on appeal, appellant relies on Gifford v. State, 740 S.W.2d 76 (Tex.
App.—Fort Worth 1988, pet. ref’d).

In Gifford, the
defendant and his wife wanted to put their child up for adoption.  Id. at 78.  A married
couple wanting to adopt learned about Gifford and sought him out.  Id.  After initially declining, Gifford’s wife
called them six weeks later asking if they were still interested and if they
could help them out financially with about $3,500.  Id.  This amount exceeded the cost of the hospital
bills incurred with the birth of the child. 
Id.  The Texas Rangers were eventually
notified.  Id.

Gifford indicated, however, that he was not sure of the
legality of the exchange and wanted everything to be done legally.  Id.  The adoptive couple assured him that they had
an attorney and they would take care of the legal issues.  Id.  The adoptive couple assured Gifford that the
process was legal.  Id.  The Fort Worth Court of
Appeals held that the false representations of the legality of the process was
entrapment because receiving money for putting a child up for adoption is not
inherently illegal.  Id. at 79–80.

Appellant argues that it is not inherently illegal to
present a bill of exchange to a bank and that there is no evidence that she
knew the bills of exchange were fraudulent.

We have already held that there is evidence to support the
determination that appellant knew the bills of exchange were fraudulent.  It is inherently illegal to obtain money from
a bank with fraudulent bills of exchange. 
See Tex. Penal Code Ann. § 31.03(a). 
Accordingly, Gifford is
distinguished from this case.

Moreover, there is no evidence to support the objective
portion of the test.  Once inducement is
shown, the issue becomes an objective test of “whether the persuasion was such
as to cause an ordinarily lawabiding person of
average resistance nevertheless to commit the offense.”  T.
England, 887 S.W.2d at 914.  The focus is on the law enforcement conduct
regardless of the predisposition of the particular defendant.  Id. at 908.  The
question is “whether the persuasion used by the law enforcement agent was such
as to cause a hypothetical person—an ordinarily lawabiding
person of average resistance—to commit the offense.”  Id.  

The only evidence of any purported persuasion is Zepeda’s
offering the documents to appellant to sign. 
Appellant argues that this act constituted at least an implicit
acknowledgement that the documents were authentic.  Even assuming this were true, we hold that an
implicit acknowledgment of authenticity does not rise to the level of
persuasion that would cause an ordinary law-abiding person to present fraudulent
documents in order to obtain money.  This
amounts to providing the appellant the opportunity to commit the crime, not an
inducement to commit it.

The actions of Wells Fargo agents, under the direction of
the Secret Service, merely afforded appellant the opportunity to commit an
offense, the intent for which originated with appellant.  See Tex.
Penal Code Ann. § 8.06(a) (providing “[c]onduct
merely affording a person an opportunity to commit an offense does not
constitute entrapment”).  We hold there
was legally sufficient evidence to support the trial court’s denial of
appellant’s directed verdict.




 

                                                                                                          
Conclusion

We affirm the judgment of the trial court.

 

 

                                                                      Laura
Carter Higley

                                                                      Justice


 

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   Tex. R. App. P. 47.2(b).











[1]         See Tex. Penal Code Ann. § 15.01(a) (Vernon 2011), § 31.03(a)
(Vernon Supp. 2011).