

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00546-CR

Leslie Ann **GONZALES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 14, Bexar County, Texas
Trial Court No. 561258
Honorable Susan Skinner, Judge Presiding

Opinion by:      Luz Elena D. Chapa, Justice

Sitting:          Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Irene Rios, Justice

Delivered and Filed: August 7, 2019

AFFIRMED

Leslie Ann Gonzales appeals her conviction of two counts of cruelty to nonlivestock animals, asserting the evidence is legally insufficient to support the jury's finding the two dogs were in her custody. Because we conclude a reasonable jury could have found beyond a reasonable doubt the dogs were in Gonzales's custody, we affirm the judgment.

## BACKGROUND

Samuel Gover (Gonzales's grandfather) called Animal Care Services ("ACS") to seek assistance and "see about the neglected animals in his backyard." ACS investigator Joey Cortez

went to the property and interviewed Gover. Cortez learned that Gover owned the property, but Gover was initially hesitant to provide information about the dogs' owner. Gover finally told Cortez the dogs belonged to his granddaughter (Gonzales) and her boyfriend and "they were responsible for them."

The property consisted of a main house, in which the Govers lived, and a separate back apartment and yard, where Gonzales and her family had lived with her dogs. Inside the fenced section of the yard adjacent to the back apartment, Cortez found one deceased dog, and one dog in "very bad condition." Cortez found no signs of food, water, or shelter that might have been provided for the dogs.

Cortez later contacted Gonzales, who stated she owned the dogs. Gonzales told Cortez that she, her boyfriend, and her two children moved from the apartment behind her grandparents' house four months prior to Gover making the telephone call to ACS. Cortez testified Gonzales told him "it was her responsibility" to provide for the animals. Both Gonzales and her boyfriend told Cortez they had been returning to the house to feed the dogs, and on occasions when they could not do so, they would ask her grandfather to help, "but she said she would then go back to care for them." At trial, however, Gonzales and her daughter testified the Govers wanted the dogs to stay on the property for security reasons and they had agreed to take care of the dogs. Gonzales denied having returned to the house to feed the dogs after she moved and testified she believed her grandparents were feeding them.

Gover told Cortez that he was physically unable to care for the dogs and Cortez testified that Gover was elderly, moved very slowly, and did not appear to be capable of providing care for the animals. Gonzales's aunt testified her parents, the Govers, did not agree to take responsibility for the care of the dogs and they would not have been able to take care of the dogs due to their mobility issues and limited financial resources. The dogs were a large breed and both Gonzales's

grandparents had mobility and medical conditions that made them "frail." The aunt further testified her parents themselves needed full time assistance with food preparation, medication administration, and transportation. They were on a fixed income and would not have been able to purchase food for two large dogs.

Following the initial visit, Cortez obtained an Owner Surrender Form from Gonzales's boyfriend and Cortez took custody of the dogs. Upon examination of the dogs, the veterinarian reported the surviving dog was severely malnourished and suffering from "chronic starvation." Both dogs had a flea and tick infestation, matted hair to the point of entanglement with twigs and sticks, ringworm and hookworm infestation, lost approximately fifty percent of their body weight, and had no visible fat or muscle tone. The veterinarian testified the deceased dog died due to "chronic starvation" that possibly lasted weeks to months. Cortez testified this was "one of the worst cases he had seen." The veterinarian testified these conditions and the ultimate death could have been prevented with adequate supply of food, water, over the counter medication, and basic animal husbandry.

After the jury found Gonzales guilty, the trial court assessed punishment at one year in jail, probated for two years, a $500 fine, and fifteen days in jail as a condition of probation.

### LEGAL SUFFICIENCY OF THE EVIDENCE

Gonzales's sole issue on appeal is the trial court erred when it denied the motion for a directed verdict because the evidence was legally insufficient to support a finding that the dogs were in Gonzales's custody. In reviewing the legal sufficiency of the evidence, we ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979); *accord Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We review the evidence in the light most favorable to the verdict. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). "Our role on appeal is restricted to guarding

against the rare occurrence when a factfinder does not act rationally," and we must "defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quotation marks and citations omitted).

Gonzales was charged with committing the offense of cruelty to nonlivestock animals by intentionally, knowingly, or recklessly failing unreasonably to provide necessary food, water, care, and shelter for an animal in her custody. *See* TEX. PENAL CODE § 42.092(b)(3). "Necessary food, water, care, or shelter" includes the food, water, care, or shelter that is "required to maintain the animal in a state of good health." *Id.* § 42.092(a)(7). "Custody" is defined to include "responsibility for the health, safety, and welfare of an animal subject to the person's care and control, regardless of ownership of the animal." *Id.* § 42.092(a)(4).

Gonzales contends that although she owned the dogs, the Penal Code defines "custody" in terms of responsibility for care of the animals, not ownership. Gonzales argues that when she moved from the premises, her grandparents assumed responsibility for the health, safety, and welfare of the dogs and she no longer had custody of them. Gonzales relies on her own testimony and that of her daughter that the Govers wanted the dogs to remain on their property and that she made an arrangement for her grandparents to feed and care for the dogs. She testified she believed her grandparents were caring for the dogs and disagreed with her aunt's testimony that they were not capable of doing so.

The jury was free to disbelieve the trial testimony of Gonzales and her daughter. *See Hernandez v. State*, 161 S.W.3d 491, 501 (Tex. Crim. App. 2005) ("[A] factfinder may disbelieve some or all of a witness's testimony . . . ."). The jury could have believed Gonzales was telling the truth when she told Cortez she was responsible for the dogs' care and could have believed Cortez's testimony that Gonzales and her boyfriend told him they had continued feeding and caring for the

dogs after they moved. Moreover, a reasonable juror could have concluded from the evidence that Gover and his wife were not physically or financially able to provide the food, water, and care necessary to maintain the dogs in good health and that Gonzales would have known this when she moved from the property. Finally, the jury could have believed Gonzales's aunt, who testified the Govers did not agree to take responsibility for the care of the animals. Viewing all of the evidence in the light most favorable to the jury's verdict and resolving all inconsistencies in the evidence in favor of the verdict, we conclude a jury rationally could have found that Gonzales retained responsibility for the health, safety, and welfare of the dogs even after she moved away from the property. *See Mouton v. State*, 513 S.W.3d 679, 681-83 (Tex. App.—San Antonio 2016, no pet.) (holding defendant had custody of animals even though he claimed to have made arrangements for their care while he was away from property for extended period of time). The evidence is therefore legally sufficient to establish Gonzales had custody of the dogs, and we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH