IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS

 

                                                                              

                                                               NO.
PD-1911-05



 

 

                                                 OLIVER
EVANS, JR., Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                         ON
STATE=S PETITION FOR DISCRETIONARY REVIEW

                                    FROM
THE FOURTH COURT OF APPEALS

                                                             BEXAR  COUNTY



 

Cochran, J., delivered the opinion of the Court, in which Keller, P.J., and Price, Womack, Johnson, Keasler, and
Holcomb, JJ., joined.  Womack, J., filed a concurring
opinion in which Price and
Johnson, JJ., joined.  Meyers, J., dissents. Hervey, J., not participating.

 

                                                                  O
P I N I O N 

 








A jury convicted appellant of
possession of cocaine.  The court of appeals, finding that the evidence was
legally insufficient, reversed that conviction and entered an acquittal.[1] 
We conclude that the court of appeals failed to view the evidence in the light
most favorable to the jury=s verdict.[2]   We
therefore reverse the court of appeals=s judgment. 

                                                                             I.

San Antonio Police Officer Reyes
testified that he and his partner, Officer Larios, were Atargeting@ a known drug-trafficking area on the
evening of November 18, 2002, when they saw a woman walk toward a car, make
contact with someone inside of it, and then walk away.  She reappeared about
fifteen minutes later as the passenger in a van that had its headlights turned
off.  The woman got out of the van and started toward the first car.  When the
officers got out of their car and started toward the van, the woman threw
something down on the ground and started to run.  Officer Larios caught her and
retrieved the abandoned itemBa package of rock cocaine.  Meanwhile, Officer Reyes
approached the van and found crack cocaine in plain view on the driver=s side floorboard and on the rear
floorboard next to the back seat passengerBCynthia Priestley.  The officers
arrested the first woman, Terry Lee, the van driver, Robert Ochoa, and the back
seat passenger, Cynthia Priestley.  








Terry Lee told the officers that they
could find more drugs at 923 Lombrano, which was Ms. Priestley=s home.  Ms. Priestley signed a
consent-to-search form, and several officers accompanied her to 923 Lombrano. 
As Officer Reyes walked up the path to the house, he could see appellant
through the transparent storm door.  Appellant was sitting on   a couch or
chair watching TV and talking on the phone.  The officers walked in the
unlocked door.  Appellant hung up the phone.  When the officers asked appellant
if he knew why they were there, he said, ADrugs.@  Immediately in front of appellantBwithin one foot of his armB was a coffee table with numerous
baggies of cocaine and pill bottles, also containing cocaine.[3] 
There were two types of baggies; some had white powder in them, others had
yellow rocks or yellowish rock powder.  All were in plain view.  In total, the
cocaine weighed approximately fourteen grams and had an estimated street value
of $1,300.[4]

The officers arrested appellant and
then looked through the rest of the house.  They found no other drugs and no
one else in the house.  In the front bedroom, they found a large quantity of
men=s clothing in disarray.  In the back
bedroom they found women=s clothing.  They found Aa lot of letters@ with appellant=s name on them in a mail slot.  One,
a handwritten letter addressed to AMr. Oliver Evans@ at 923 Lombrano, from a AMr. CED. D. Haynes #887472, Lynaugh
Unit, 1098 S. Hwy 2037, Fort Stockton, Tx. 79755@ was postmarked October 28, 2002, or
slightly less than a month before the search.  That envelope was admitted as an
exhibit.  Appellant had $160 in twenty dollar bills in his pocket.  

After their search, the  officers
brought Ms. Priestley inside.  She repeatedly told the officers that all of the
drugs were hers and that appellant, who is her nephew, had no knowledge of
them.  








 

Appellant=s former wife, Joslyn Jorden,
testified on his behalf.  She said that she was in the Army, stationed at Fort
Hood.  She said that, since early October of 2002, appellant had been living
with their two young sons at her parents= home about fifteen miles from the
Lombrano house.  On weekends she would come down to see her family and help
appellant fill out job applications.  She said that Ms. Priestley lived with
appellant=s grandmother at 923 Lombrano.  Appellant was Achecking@ on the house while his grandmother
was in Oklahoma for a few days because Ms. Priestley was involved with drugs
and had been selling items, including an airBconditioning unit, a stereo, and a
TV, from her grandmother=s home.  AIt was a huge issue@ with Ms. Priestley=s family.  Ms. Jorden testified that,
on the evening appellant was arrested, he had called her while he was checking
on the Lombrano house.  During that conversation, she Aheard a lot of scuffling and then the
phone hung up.@  When she called back, a police officer answered and said that appellant
was going to jail.

Appellant was charged with (1)
possession of a controlled substanceBcocaineBwith the intent to deliver it, and
(2) simple possession of a controlled substance.  The jury found him not guilty
of the former, but guilty of the latter, and the trial judge sentenced him to
ten years= imprisonment.








On appeal, appellant argued that the
evidence was both legally and factually insufficient to prove, beyond a reasonable
doubt, that he had exercised Aactual care, custody, control, or management of the cocaine.@  The court of appeals agreed,
concluding that the record evidence failed to Aaffirmatively link@ appellant to the cocaine other than
by evidence of his presence and proximity to the drugs.[5] 


                                                                            II.

The court of appeals set out the
correct standard for reviewing the legal sufficiency of the evidence:

When deciding whether evidence is [legally] sufficient
to support a conviction, a reviewing court must assess all the evidence in the
light most favorable to the verdict to determine whether any rational trier of
fact could find the essential elements of the crime beyond a reasonable doubt.[6]


 













The court of appeals then noted that,
in a possession of a controlled substance prosecution, Athe State must prove that:  (1) the
accused exercised control, management, or care over the substance; and (2) the
accused knew the matter possessed was contraband.@[7]  Regardless of whether the evidence
is direct or circumstantial, it must establish that the defendant=s connection with the drug was more
than fortuitous.[8]  This is the
so-called  Aaffirmative links@ rule[9] which
protects the innocent bystanderBa relative, friend, or even stranger to the actual possessorBfrom conviction merely because of his
fortuitous proximity to someone else=s drugs.[10] 
Mere presence at the location where drugs are found is thus insufficient, by
itself, to establish actual care, custody, or control of those drugs.[11] 
However, presence or proximity, when combined with other evidence, either
direct or circumstantial  (e.g.,A links@), may well be sufficient to
establish that element beyond a reasonable doubt.[12]  
It is, as the court of appeals correctly noted, not the number of links that is
dispositive, but rather the logical force of all of the evidence, direct and
circumstantial.[13]








The court of appeals also stated that
this Court has held that Aa factfinder may disbelieve some or all of a witness=s testimony, even when that testimony
is uncontradicted.@[14]  It then compared this rule to one recently set out
by the Texas Supreme Court:  reviewing courts cannot disregard undisputed facts
that allow of only one logical inference.[15] 
We need not, of course, follow our sister court by applying its rules for
assessing the legal sufficiency of evidence in civil cases to criminal cases
where the burden of proof is always on the State and always Abeyond a reasonable doubt,@ but we note that these two rules are
not inconsistent.  There is, however, an important distinction between Auncontradicted testimony@ and Aundisputed facts.@  For example, a defendant=s mother may testify that the
defendant was with her in Oshkosh on the night of the murder.  Even though the
State does not cross-examine the defendant=s mother, the jury is not required to
believe her uncontradicted testimony.  She is, after all, the defendant=s mother.  On the other hand, facts
that both parties agree (or assume) are trueBin this case, for example, that
appellant was seated within arm=s length of a coffee table strewn with baggies of cocaine
when the police entered the houseBare Aundisputed facts,@[16] Although the parties may disagree
about the logical inferences that flow from undisputed facts, A[w]here there are two permissible
views of the evidence, the fact finder=s choice between them cannot be
clearly erroneous.@[17]

With this general background, we turn
to the facts in this case.

                                                                            III.








The State argues that the single most
important link or connection between appellant and the fourteen grams of
cocaine rocks is the simple fact that he was sitting directly in front of
them.  They were within arm=s reach; the coffee table was less than a foot away.  This
evidence constitutes two extremely strong Apresence@ and Aproximity@  links.  Appellant was not merely
present in a house with drugs cached away somewhere, they were right under his
nose.  The drugs were in plain viewBa third link.  He was alone in the
houseBa fourth link.  He immediately
admitted that he knew why the police had walked in the doorBADrugs.@  That is a fifth link.  He received
mail at 923 Lombrano, thus raising a reasonable inference that he lived there,
which, in turn, raises a reasonable inference that he had actual care, custody,
and control of items found in plain view on the coffee table.  This is a sixth 
link.   He had $160 in twenties in his pocket, but he was apparently
unemployed.  This is a seventh, albeit weak,  link.  The State argues that the
sum total of this circumstantial evidence is sufficient to support a rational
jury=s finding, beyond a reasonable doubt,
that appellant exercised actual care, custody, control, or management of the
fourteen grams of cocaine on the coffee table.  We agree.








The court of appeals, however,
analyzed each one of these facts or links in isolation.  Apparently relying on
alternative inferences from or explanations for almost every piece of evidence,
it disregarded that evidence and concluded that nothing but appellant=s presence and proximity linked him
to the drugs.[18]  It also
recited further possible Aaffirmative links@ that might have connected appellant
to the drugs (such as intoxication, flight, and furtive gestures) but did not
exist in this case.  The jury presumably went through exactly the same weighing
of evidence, credibility assessments, and alternative-explanation exercises and
came to the opposite conclusion, i.e., appellant was connected 
to the drugs.  Under federal and Texas law, juries trump both trial and
appellate judges on weight-of-evidence determinations.[19]

            For example, the court of
appeals disregarded the fact that appellant Awas the sole occupant of the house@ by saying that it was undisputed
that Ms. Priestley lived there.[20]  The issue
is not how many people lived in the house, but rather the fact that appellant
was the only person in the house at the time the police entered.  He was the
only person in the presence of and in immediate proximity to the drugs that 
were in plain view.  He received Alots@ of mail at this house, and there was
men=s clothing in the front bedroom.[21] 
He was watching TV and talking on the phone.  From these facts a reasonable
factfinder could conclude that appellant lived at the house, along with Ms.
Priestley.  And, a reasonable factfinder could conclude that he was Ahome alone@ with the drugs.  








Similarly, the court of appeals
disregarded appellant=s statement to the police that he knew that they were there
because of Adrugs,@ based on Athe undisputed evidence of the family=s knowledge of Priestley=s involvement with drugs and her
arrest for selling drugs only moments before.@[22]  It is undisputed that Ms. Priestley
had been arrested just moments earlier, but there is no suggestion that
appellant knew that fact at the time he responded to the police officer=s question.  Further, simply because
appellant=s former wife testified  that Ms. Priestley=s involvement with drugs was known to
her family did not make that an undisputed fact.  It may be uncontradicted
testimony, but the State neither assumed nor admitted the truth of that fact,
and it does not concern a physical fact that cannot be denied.[23] 
These two conceptsBAuncontradicted testimony@ and Aundisputed facts@Bshould not be confused.  On the other
hand, it is Aa@ reasonable inference that a person
who knows that he is sitting in front of a pile of contraband (although it is
not his contraband and he has no relationship to it) would nonetheless respond
with ADrugs@ when arriving police officers ask
him if he knows why they are entering his home.  Viewed in a vacuum, appellant=s response of ADrugs@ gives rise to at least two,
reasonably equal, plausible inferences.  In such a situation, it is clearly the
jury that makes the choice of which inference to accept.[24]

The court of appeals disregarded the
evidence that appellant had received lots of mail at the Lombrano address
because the letter offered into evidence was postmarked nearly a month earlier.[25] 
But because appellant=s position was that he never lived thereBnot that he had recently moved outBthe postmark date has little bearing
on that question.  If he never lived on Lombrano, why was he getting personal
letters at that address at any time?  








The court of appeals disregarded the
evidence of the men=s clothing in the front bedroom because it was never
independently established as being appellant=s clothing.  That is true, but there
was no suggestion that any other male lived in the front bedroom, thus, it was
at least Aa@ reasonable inference that it was
appellant=s clothing and that he lived there.          Also, the court of appeals
noted that possession of $160 in cash is not Asuch a large amount of cash in today=s times that it will yield a
reasonable inference of illegal activity.@[26]  Viewed in a vacuum, that evidence
is, of course, hardly dispositive.  But combined with the evidence that
appellant did not have a job and was seated next to $1,300 in contraband, the
$160 does have some slight probative value in connecting appellant to the
actual care or custody of the drugs.  The jury could not be considered
irrational for including the $160 in weighing the evidence.








Appellant did offer evidence of a
reasonable alternate hypothesis:  he was merely Achecking on@ Ms. Priestley, who was known by her
family to be involved with drugs, while his grandmother was in Oklahoma for a
few days.   He had just driven fifteen miles from his ex-wife=s home, and the police
serendipitously arrived at the very moment that he was calling his former wife
at Fort Hood from his grandmother=s phone.  This is a plausible
explanation for appellant=s presence in the house and his proximity to the drugs, as
well as his knowledge of their existence.  This tidy explanation accounted
nicely for almost all of the incriminating evidence.  Also, Ms. Priestley=s repeated statements to the police
after appellant was arrested that all of the drugs were hers is consistent with
Ms. Jorden=s testimony.  The jury was entitled to believe this evidence, but it was
not required to do so.  This Auncontradicted testimony@ did not recite Aundisputed facts.@  A jury could have found that both
Ms. Jorden (appellant=s former wife and the mother of his children, with whom he
was still very friendly) and Ms. Priestley had a motive to place all blame on
Ms. Priestley (she was, after all, caught Ared-handed@).  The jury, by its verdict,
rejected this alternate scenario.[27]  

This jury was able to make a
discriminating assessment of the facts, finding that the State proved appellant=s possession of the cocaine beyond a
reasonable doubt, but failed in its burden to prove Aintent to deliver@ those drugs beyond a reasonable
doubt.








We conclude that the circumstantial
evidence, when viewed in combination and its sum total, constituted amply
sufficient evidence connecting appellant to the actual care, custody, control
or management of the cocaine in front of him.  It is the logical force of the
circumstantial evidence, not the number of  links, that supports a jury=s verdict. The logical force of the
combined pieces of circumstantial evidence in this case, coupled with
reasonable inferences from them, is sufficient to establish, beyond a
reasonable doubt, that appellant exercised actual care, custody, control, or
management of the cocaine on the coffee table.  The jury was not required to
believe the contrary direct evidence from Ms. Priestley (Athe drugs belong only to me, not my
nephew@) or circumstantial evidence from Ms.
Jorden (providing an alternate innocent explanation of appellant=s presence and proximity to the
cocaine), who could both be considered interested witnesses.  

We therefore reverse the judgment of
the court of appeals and remand the case to that court for further proceedings
consistent with this opinion.

Delivered:  September 20, 2006

Publish









[1]
Evans v. State, 185 S.W.3d 30 (Tex. App.BSan
Antonio 2005).





[2] 
We granted the State=s
three grounds for review which generally asked:  (1) whether the affirmative
link evidence was sufficient to establish appellant=s possession of the cocaine and his knowledge
that the substance was cocaine; (2) whether the court of appeals erred in
failing to view the evidence in the light most favorable to the verdict; and
(3) whether the court of appeals erred by finding the evidence legally
insufficient on the basis of an alternative hypothesis. 





[3]
Officer Reyes testified that the numbers A30,@ A40,@
and A15@ were written on the pill
bottle tops, and these numbers were probably the price of the cocaine rocks
inside of them.





[4]
Appellant stipulated to the weight and composition of the contraband.





[5]
Evans, 185 S.W.3d at 37.





[6]
Id. at 34 (quoting Poindexter v.
State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005)). 





[7]
Id. (internal quotations omitted).





[8]
Id. (citing Poindexter, 153 S.W.3d at 405-06).





[9]
We agree with Judge Womack=s
concurrence that the Aaffirmative
links@ rule is not an
independent test of legal sufficiency.  We use that term merely as a shorthand
catch-phrase for a large variety of circumstantial evidence that may establish
the knowing Apossession@ or Acontrol, management, or care@ of some item such as
contraband.   Judge Womack is correct in stating that the legal issue is Awhether there was evidence
of circumstances, in addition to mere presence, that would adequately justify
the conclusion that the defendant knowingly possessed the substance.@  Infra, slip op. at
2 (Womack, J., concurring).  We have used that term Aaffirmative links,@ but we recognize that Aaffirmative@
adds nothing to the plain meaning of Alink.@  Henceforth, we will use
only Alink@ so that it is clear that
evidence of drug possession is judged by the same standard as all other
evidence.





[10]
Evans, 185 S.W.3d at 37.





[11]
Id. at 35 (quoting Martin v. State, 753 S.W.2d 384, 387 (Tex.
Crim. App. 1985)).





[12]
The court of appeals noted that the Fourteenth Court of Appeals recently
summarized a non-exclusive list of possible Aaffirmative
links@ that Texas
courts have recognized as sufficient, either singly or in combination, to
establish a person=s
possession of contraband:

(1) the defendant=s presence when a search is
conducted; (2) whether the contraband was in plain view; (3) the defendant=s proximity to and the 
accessibility of the narcotic; (4) whether the defendant was under the
influence of narcotics when arrested; (5) whether the defendant possessed other
contraband or narcotics when arrested; (6) whether the defendant made
incriminating statements when arrested; (7) whether the defendant attempted to
flee; (8) whether the defendant made furtive gestures; (9) whether there was an
odor of contraband; (10) whether other contraband or drug paraphernalia were
present; (11) whether the defendant owned or had the right to possess the place
where the drugs were found; (12) whether the place where the drugs were found
was enclosed; (13) whether the defendant was found with a large amount of cash;
and (14) whether the conduct of the defendant indicated a consciousness of
guilt.

Id. at 36 (citing Olivarez v. State, 171 S.W.3d 283, 291
(Tex. App.BHouston
[14th Dist.] 2005, no pet.)).  These are simply some factors which may
circumstantially establish the legal sufficiency of the evidence to prove a
knowing Apossession.@  They are not a litmus
test.  





[13]
Evans, 185 S.W.3d at 35.  





[14]
Id. at 34 (quoting Hernandez v. State, 161 S.W.3d 491, 501 (Tex.
Crim. App. 2005)).





[15]
Id. at 34 n.3.  The court of appeals noted,

The Supreme Court of Texas, on the other hand, has recognized
that Adisregarding
undisputed facts that do not support the finding could skew the analysis@ of whether the evidence is
legally sufficient to support a fact finding.  In the Interest of J.F.C.,
96 S.W.3d 256, 266 (Tex. 2002); see
also City of Keller v. Wilson, 168 S.W.3d 802, 814 (Tex. 2005) (AAn appellate court
conducting a legal sufficiency review cannot >disregard
undisputed evidence that allows of only one logical inference.=  By definition, such
evidence [c]an be viewed in only one light; and reasonable jurors can reach
only one conclusion from it.  Jurors are not free to reach a verdict contrary
to such evidence.@); Southwestern
Bell Tel. Co. v. Garza, 164 S.W.3d 607,
629 (Tex. 2004) (ABut
while our [legal sufficiency] review must acknowledge reasonable inferences
that may have been drawn by the jury, it cannot . . . disregard undisputed
evidence@).





[16]
The Texas Supreme Court has noted that a proper legal-sufficiency review Aprevents jurors from
substituting their opinions for undisputed truth.@ 
City of Keller, 168 S.W.3d at 817.  Conclusive evidence is dispositive
of the fact or element at issue.  Such evidence Abecomes
conclusive (and thus cannot be disregarded) when it concerns physical facts
that cannot be denied,@
or Awhen a party
admits it is true.@  Id.
at 815.

For example,
when a felony DWI defendant stipulates to having two prior DWI convictions, he
has admitted that this fact is true.  That jurisdictional fact is conclusively
established and the defendant cannot later dispute it.  See Bryant v. State,
187 S.W.3d 397, 400 (Tex. Crim. App. 2005). Applying that Aundisputed fact@ construct in this case, we
note that appellant stipulated to the weight and composition of the cocaine; he
could not now dispute it.





[17]
Anderson v. City of Bessemer,
470 U.S. 564, 574 (1985).

 





[18]
Evans, 185 S.W.3d at 37.





[19]
See Jackson v. Virginia, 443 U.S. 307, 326 (1973) (AWhen the court is faced
with a record of historical facts that supports conflicting inferences, it must
presumeBeven if it
does not affirmatively appear in the recordBthat
the trier of fact resolved any such conflicts in favor of the prosecution@); Moff v. State,
131 S.W.3d 485, 489 (Tex. Crim. App. 2004) (Aan
appellate court must consider all evidence actually admitted at trial in
its sufficiency review and give it whatever weight and probative value it could
rationally convey to a jury@)
(emphasis in original).





[20]
Evans, 185 S.W.3d at 36.





[21]
There was no evidence that any other male might have lived or stayed at the
Lombrano house.





[22]
Evans, 185 S.W.3d at 36.





[23]
See City of Keller v. Wilson, 168 S.W.3d 802, 815-16 (Tex. 2005).





[24]
Anderson, 470 U.S. at 574.





[25]
Evans, 185 S.W.3d at 36.





[26]
Id.





[27]
When we compare our legal sufficiency rules to those of our brethren on the
civil side, we find that the Texas Supreme Court has stated that Awhen the circumstantial
evidence of a vital fact is meager, a reviewing court must consider not just
favorable but all the circumstantial evidence, and competing inferences as
well.@  City of
Keller, 168 S.W.3d at 814.  This does not mean, of course, that the jury is
required to choose what a reviewing court believes is the most reasonable
inference.  See Lozano v. Lozano, 52 S.W.3d 141, 148-49 (Tex. 2001) (per
curiam) (Phillips, C.J., concurring and dissenting).  It means that a
reviewing court cannot wholly disregard or ignore that evidence in its
threshold analysis.  But it is the jury, not the reviewing court, that chooses
between alternate reasonable inferences. As our sister court has stated, Acourts reviewing all the
evidence in a light favorable to the verdict must assume jurors made all
inferences in favor of their verdict if reasonable minds could, and disregard
all other inferences in their legal sufficiency review.@  City of Keller, 168 S.W.3d at 821.