NO. 07-08-0452-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 3, 2009

_____


MARTIN MENDOZA REYNOZA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-2008A-010; HONORABLE ROLAND SAUL, JUDGE

_____


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Martin Mendoza Reynoza, was convicted by a jury of burglary of a habitation with the intent to commit a felony offense, sexual assault, and was sentenced to ninety-nine years confinement and fined $5,000. In a single issue, Appellant contends the State's evidence at trial was factually insufficient to support his conviction. We affirm.

## Background

On January 16, 2008, Appellant was indicted by a Deaf Smith County Grand Jury for committing the offense of burglary of a habitation with the intent to commit a sexual assault on or about November 24, 2007.

The following evidence was adduced during a jury trial held September 30 through October 2, 2008. In the early morning hours of November 24, 2007, Germaine Garza received a 911 call reporting a break-in and dispatched Officers Tony Martinez and Gabriel Guerrero, Hereford Police Department, to a residence located on Avenue K. When Officer Martinez made contact with the victim, L.O., she was crying, scared, and hysterical. She reported that a Hispanic male in his twenties wearing a hooded sweatshirt had broken into her house and sexually assaulted her. She indicated she could not see his face because the room was dark.

L.O. was then transported by her daughter to the police station where she gave a statement to Officer Martinez and described her assailant as a male in his twenties who was wearing a hood. She also told Officer Martinez that she got a good look at the male, had never seen him before, and would be able to recognize him if she saw him again. She also believed her assailant might have been one of her son's friends who committed the crime for revenge. She was next transported to an Amarillo hospital to undergo a sexual assault examination.

Virginia Young, a registered nurse and certified adult sexual assault examiner, conducted the examination. Young testified that the victim was crying and upset. She had suffered abrasions to her knees as well as multiple areas of trauma that were very common when someone had been sexually assaulted. Young collected swabs of secretions located in the areas of her vagina, anus, and leg. In her opinion, the victim's vagina had been penetrated.

Elva Reynoza, Appellant's wife and the victim's sister, testified that, at approximately 7:00 a.m. on November 24, 2007, she and Appellant left to pick up her father in Mexico. While they were en route, Elva received a telephone call from a family member informing her that their sister, L.O., had been sexually assaulted. When she informed Appellant of the call, he responded: "It's true. I went out of the house to look for drugs. I could not find any, and I went over there." They continued to Mexico and picked up her father. When they returned around midnight, Elva testified she asked Appellant what he was going to do. He responded that he was going to turn himself in to the police.

Garza testified Appellant and Elva entered the police station and Appellant indicated he was turning himself in for what happened on Avenue K. Garza called Officer Martinez who asked Detective Jimmy Stevens to conduct the interview. After Appellant was advised of his *Miranda* rights and signed a written waiver of his rights, he gave a videotaped statement.

In his statement, Appellant indicated he drove home from work at 9:00 p.m. on the night of November 23. He began drinking beer and using cocaine. At home, he finished drinking a twelve pack of beer. Afterwards, he called L.O. and asked if her husband was at home. After she indicated her husband was not at home, he hung up. Appellant then attempted to locate more cocaine but was unsuccessful. He next drove to L.O.'s house because, "in the past, they had flirted." He parked in the alley behind the house and, when he could not open the back door, broke a rear window into the house. As he entered the house, L.O. was coming from the bedroom yelling and praying. He pushed her into bedroom and grabbed her from behind. His statement continued as follows:

> I already knew what I wanted to do with [L.O.]. [They] fell on the bed [and he] began to kiss [her] all over her body including her buttocks. I knew I couldn't have an erection when I am on drugs. I had on a brown sweater and when I was kissing [her] I was wearing a hood on my head. We got up and left out the same window I had broken earlier. I came to the PD while I am sober to make things right. I know what I did to [L.O.] was wrong.

Following the interview, Detective Stevens testified Appellant permitted the officers to obtain samples of his DNA. After the statement was typed and signed, Appellant was placed under arrest.

After the arrest, Officer Richard Jimenez accompanied Appellant's wife to her home where he retrieved a brown, hooded jacket. At trial, Elva identified it as the jacket worn by her husband the night of November 23, when he left the house to buy some beer and

4

drugs. She also testified that contact between Appellant and the victim was very limited during the past five to six years.

Officer Guerrero testified that, at approximately 12:30 a.m. on November 24, 2007, he had observed a red pickup similar to Appellant's pickup in L.O.'s driveway. He also testified that the pickup appeared similar to a pickup he observed in the driveway the night before.

L.O. testified that, on November 23, 2007, she went to bed after reading and fell asleep about 11:00 p.m. She left a small light on in the bathroom situated outside her bedroom and cracked open her bedroom door. She later received a call from someone asking for her husband. After she informed the caller he was not at home and asked if it wasn't a little late to be calling, the caller hung up. While trying to go to sleep, she heard a loud bang like something had been broken. She arose from bed, but could not move. Although the room was dark, she could tell her assailant was wearing a hood and blue jeans. He began undressing her and told her to remain still or he would kill her. He also jabbed what she thought was a gun in her side. Despite her attempts to fend off her assailant and free herself, he sexually assaulted her and left through the broken window in the rear of the house.

L.O. further testified that, over the past six years, she had never had a relationship with Appellant, her brother-in-law. At most, she testified there were several chance meetings in the street while driving but no communication.

5

Steven Brent Hester, a serologist for the DPS crime laboratory in Lubbock, testified that the sperm fraction of L.O.'s labial swabs was consistent with Appellant's DNA profile. He also testified, to a reasonable degree of certainty, Appellant's DNA was a match for the samples taken in, and on, L.O.[1]

After both parties rested, the trial court instructed the jury, without objection, that they were the "exclusive judges of the facts proved, the weight of the evidence and the credibility of the witnesses." Thereafter, the jury returned a verdict of guilty and Appellant filed this appeal.

## Discussion

Appellant asserts the evidence at trial was factually insufficient to support his conviction for burglary of a habitation with intent to commit the felony offense of sexual assault. In support, Appellant points to his written statement wherein he indicated that, because he was on drugs, he could not get an erection, and the victim's inconsistent descriptions of her assailant given at her house and later at the police station.[2]

---

[1]Hester testified that the probability of selecting an unrelated person at random who would be the source of the DNA profile was approximately one in 11.27 sextillion for caucasians, one in 24.39 septillian for blacks, and one in 2.384 sextillion for hispanics. A sextillion is a number followed by eight commas separating all the zeros.

[2]Although Appellant also argues evidence adduced during the punishment hearing, we do not consider evidence offered during the punishment phase when evaluating the factual sufficiency of the evidence to establish a defendant's guilt. *See Barfield v. State,* 63 S.W.3d 446, 450 (Tex.Crim.App. 2001); *Munoz v. State*, 853 S.W.2d 558, 560 (Tex.Crim.App. 1993).

6

## I.      Standard of Review

When conducting a factual sufficiency review, we begin with the assumption that the evidence is legally sufficient under *Jackson v. Virginia*.[3]  *See Laster v. State*, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009).  Evidence that is legally sufficient, however, can be deemed factually insufficient in either of two ways: (1) the evidence supporting the conviction is so weak that the jury's verdict seems "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias," or (2) considering conflicting evidence, the factfinder's verdict is "against the great weight and preponderance of the evidence."  *Id.* In a factual sufficiency review, the reviewing court must consider all of the evidence in a neutral light (i.e., without the prism of "in the light most favorable to the prosecution"). *Steadman v. State*, 280 S.W.3d 242, 246 (Tex.Crim.App. 2009); *Laster*, 275 S.W.3d at 518.

Further, in reviewing a jury's decision, we are mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *Lacon v. State*, 253 S.W.3d 699, 705 (Tex.Crim.App. 2008).  A jury is entitled to believe or disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted.  *Hernandez v. State*, 161 S.W.3d 491, 501 (Tex.Crim.App. 2005). Therefore, appellate courts should afford almost total deference to a jury's decision when that decision is based upon an evaluation of credibility; *Lancon*, 253 S.W.3d at 705,

---

[3]443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

because, being present to hear the testimony, as opposed to relying on a cold record, the jury is in the better position to judge the credibility of the witness. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).

## II.     Burglary With Intent To Commit A Sexual Assault

A persons commits the offense of burglary if (1) without the effective consent of the owner, (2) the person enters a habitation, or building (or any portion of a building) (3) not then open to the pubic, (4) with the intent to commit a felony, theft, or an assault. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003). A person commits the offense of sexual assault if he or she (1) intentionally or knowingly (2) causes the penetration of the anus or female sexual organ of another person by any means or causes the sexual organ of another person to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor (3) without that person's consent. *Id*. at § 22.011(a)(1) (A) & (C). A sexual assault under subsection (a)(1) is "without consent" of the other person "if the actor compels the other person to submit or participate by the use of physical force or violence." *Id.* § 22.011(b)(1).

The indictment charged Appellant with entering L.O.'s habitation with intent to commit sexual assault, and the State was therefore required to prove Appellant had the intent to commit a sexual assault when he entered L.O.'s residence. *See DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex.Crim.App. 1988). The jury could have inferred Appellant possessed the requisite intent from either his words, acts, or conduct and the surrounding

8

circumstances. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004); *Wilkerson v. State*, 927 S.W.2d 112, 115 (Tex.App.–Houston [1ˢᵗ Dist.] 1996, no pet.).

Appellant contends the evidence is factually insufficient because his written statement to the police states that he and L.O. had been flirting for years and he knew when he entered L.O.'s house he could not have an erection because he was on cocaine. He also contends L.O.'s testimony was not credible because of inconsistencies between her trial testimony and statements given to the police and others shortly after she was assaulted.

Appellant's statement indicates he drove to L.O.'s house because, "in the past, they had flirted." After he broke in through the rear window, "[he] already knew what [he] wanted to do with [L.O.]." He also stated that he was wearing a hood on his head while he was kissing her.

L.O. testified Appellant forcibly entered her residence in the early morning hours while she was sleeping by breaking a window facing the alley and grabbed her in a darkened bedroom. She testified that, while wearing a hood over his face, he forcibly removed her undergarments and commanded her to not move under threat of death. He pushed her on the bed while telling her he wanted "pussy." He put his fingers in her vagina, touched her vagina with his mouth, attempted to penetrate her anus, and penetrated her vagina. He then left through the broken window without taking anything

9

from her home. Subsequent DNA testing confirmed that labial swabs taken in, and on, L.O.'s body were consistent with Appellant's DNA profile.

Young testified L.O. had sustained injuries to her knees as well as multiple areas of trauma that were very common when someone had been sexually assaulted and, in her expert opinion, L.O.'s vagina had been penetrated. Detective Stevens documented bruising to L.O.'s knees as well as upper and lower leg areas. Officers at the residence immediately after the attack described L.O. as crying, scared, and hysterical. Her daughter described L.O. as shaken, scared, and unable to speak when she was transporting her to the police station and, at the time of her assault examination, Young described L.O. as crying and upset.

Viewing the evidence in a neutral light, we cannot conclude that the evidence supporting Appellant's guilt of the offense of burglary of a habitation with the intent to commit sexual assault is so weak as to render the jury's verdict clearly wrong and unjust or that the verdict is against the great weight of the evidence.[4] Assuming the jury chose to believe L.O.'s version of events or, otherwise found her credible, the jury could reasonably infer from Appellant's actions that he entered her house with the intent to

---

[4]*See Sharpe v. State,* 881 S.W.2d 487, 490 (Tex.App.–El Paso 1994, no pet.) (holding victim's testimony that defendant unplugged her phone, got on top of her, and she thought he was going to rape her, supported defendant's conviction for burglary of a habitation with intent to commit sexual assault); *Moone v. State*, 802 S.W.2d 101, 104 (Tex.App.–Austin 1990, pet. ref'd) (holding evidence sufficient to support defendant's conviction for burglary of a habitation with intent to commit sexual assault when defendant entered thirteen year-old girl's room in the dead of night, was intoxicated, used knife to cut her underwear, concealed his identity when she awoke, and used mild force to prevent her from arousing others in house).

sexually assault her. *See Moore v. State*, 54 S.W.3d 529, 540 (Tex.App.–Fort Worth 2001, pet. ref'd). Thus, we hold that the evidence is factually sufficient to support Appellant's conviction. Appellant's single issue is overruled.

### Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice

Do not publish.