

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00123-CR

**KENNETH WAYNE BARGER,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 18-03531-CRF-85

## MEMORANDUM OPINION

In one issue, Appellant Kenneth Wayne Barger appeals his conviction for the state jail felony of possession of less than one gram of methamphetamine, a violation of Section 481.115 of the Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 481.115. The trial court assessed punishment and sentenced Barger to twelve months' incarceration. Barger asserts there was insufficient evidence to support his conviction. We will affirm.

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.
>
> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

Subsection 481.115(a) provides that a person commits an offense if "the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.115(a). Methamphetamine is listed as a Penalty Group 1 controlled substance. *Id*. § 481.102(6). To prove unlawful possession of a controlled substance, the State must establish that: (1) the accused exercised care, control, or management over the substance, and (2) the accused knew the substance was contraband, in this case, methamphetamine. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015); *see* TEX. PENAL CODE ANN. § 1.07(a)(39).

The evidence must show beyond a reasonable doubt that a defendant's connection with the controlled substance was more than just fortuitous, which is known as the "affirmative links" rule. *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *Poindexter*, 153 S.W.3d at 406. Evidence that links the defendant to the controlled substance suffices for proof that he possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). "'When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional

independent facts and circumstances which affirmatively link the accused to the contraband.'" *Poindexter*, 153 S.W.3d at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)). Although mere presence is insufficient to establish an affirmative link, a defendant's proximity to the controlled substance, when combined with other evidence, either direct or circumstantial, may well be sufficient to establish actual care, custody, or control over the controlled substance beyond a reasonable doubt. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

Factors that may be helpful to consider when determining whether the accused was sufficiently linked to the controlled substance include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (quoting *Evans*, 202 S.W.3d at 162 n.12). Texas courts have recognized that this is a nonexclusive list of factors that may be sufficient, either individually or in combination, to establish a defendant's possession of a controlled substance. *Evans*, 202 S.W.3d at 162 n.12. "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id*. at 162. The ultimate inquiry remains that set forth in

*Jackson*:  "Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?"  *Tate*, 500 S.W.3d at 414.

DISCUSSION

The evidence introduced at trial, viewed in the light most favorable to the verdict, reflects that Barger was hired to paint the inside of a rental home.  When the out-of-town homeowner came to do a final inspection, he discovered the painting had not been completed and found Barger asleep on the floor in a back bedroom.  The homeowner awakened Barger to try to get him back to work as potential tenants were scheduled to view the house that afternoon.  The homeowner then left to run some errands.  When the homeowner returned, he viewed Barger standing in the bathroom apparently asleep on his feet.  The homeowner took a video of Barger, which was introduced into evidence.  The homeowner then confronted Barger, waking him from his stupor and asking him to leave.  Barger insisted he could finish the job.  The homeowner stepped outside of the house to consider what course of action to take, and flagged down a passing police officer.  The homeowner explained the situation to the officer and asked the officer to assist in removing Barger from the house.

The homeowner testified that no one else had access to the house during the time of Barger's employment, and there was no indication that anyone else had been in the house.  The homeowner also testified that he carefully inspected the house after the last tenants left to make sure they had left nothing behind and that nothing remained except possibly some food in the refrigerator.

The officer who first encountered the homeowner viewed the homeowner's video of Barger. The first officer, and a second officer who arrived as back-up, spoke with Barger. In their training and experience, Barger appeared to be "coming down" after a methamphetamine high. The officers did a walk-through of the rental property and discovered a glass pipe that's commonly used to smoke narcotics, including methamphetamine, on a countertop in the kitchen area. The pipe was no longer transparent, but discolored as if it had been used to smoke narcotics. Although broken on the end, the first officer testified that the pipe was still in a usable state. The officers also found a butane lighter, commonly used to smoke narcotics, and glass fragments from what appeared to be a broken narcotics pipe in separate closets.

Barger consented to a search of his person. Recovered from Barger's pockets were another butane lighter, a pill bottle containing a Hydrocodone pill and a Xanax pill, and a cigarette box containing four small, empty baggies covered with what appeared to be methamphetamine residue. Barger disavowed knowledge of the items in his pockets, which the officers testified was behavior common among drug users in an attempt to distance themselves from contraband. Barger was placed into custody due to his possession of the Hydrocodone and Xanax and transported to the jail.

The transporting officer requested a strip search of Barger. While the strip search occurred, Barger's shoes remained in the pre-booking area. The officer conducting the strip search then recovered a small baggie of methamphetamine from one of Barger's shoes. The baggie was consistent with the empty bags found in the cigarette package

taken from Barger's pocket. As one officer testified, it is common for drug users to hide their drugs in a shoe as it is a place that is often overlooked during a pat-down search.

The transporting officer recalled no other inmates being present in the pre-booking area. The officer further testified that if a civilian is in the pre-booking area, he is accompanied by an arresting officer. The exception would be in the case of a jail trustee performing a task such as sweeping or mopping the floor.

Questioning by Barger's attorney focused on the possibility that the glass pipe found in the kitchen area had been discovered by Barger after moving the refrigerator to paint. The officer who first discovered the glass pipe testified that such a circumstance was possible but not probable.

Further questioning by defense counsel focused on the possibility that someone had placed the methamphetamine baggie in Barger's shoe while he was being strip searched. A video was shown to the jury, although it is not part of the record, that indicated the presence of another individual in the pre-booking area. Nothing in the record indicates this individual's identity or proximity to Barger's shoes. Barger again disavowed knowledge of the meth in his shoe but told officers that a woman he had been staying with was "out to get him." Barger also admitted to the officers that he had "smoked dope" within the last two or three days. "Dope" is a slang phrase for a variety of illegal narcotics, including methamphetamine. *See Hernandez v. State*, 161 S.W.3d 491, 494-95 (Tex. Crim. App. 2005); *see also Jones v. State*, No. 12-16-00304-CR, 2017 WL 6884419, at *3 n.1 (Tex. App.—Tyler Aug. 23, 2017, no pet.) (mem. op., not designated

for publication); *Goswick v. State*, No. 11-16-00164-CR, 2017 WL 2986841, at \*6 (Tex. App.—Eastland July 13, 2017, no pet.) (mem. op., not designated for publication).

Based upon the combined and cumulative force of the evidence and any reasonable inferences therefrom, the jury was rationally justified in finding Barger guilty beyond a reasonable doubt of possession of methamphetamine. *See Tate*, 500 S.W.3d at 414.

CONCLUSION

We overrule Barger's sole issue and affirm the judgment of the trial court.


MATT JOHNSON
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Wright[1]
Affirmed
Opinion delivered and filed August 10, 2022
Do not publish
[CR25]



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.