

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00056-CR

———————————————

CHRISTOPHER MICHAEL CARMAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1745400

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Christopher Michael Carman appeals from two felony convictions for online solicitation of a minor. *See* Tex. Penal Code Ann. § 33.021(b)(2), (c). Carman raises three issues on appeal. First, he contends that the State's delayed disclosure of evidence about an expert witness's post-trial resignation from her employment violated Article 39.14 of the Texas Code of Criminal Procedure. Second, he contends that the delayed disclosure violated his due process rights under the Fourteenth Amendment. Third, he contends that the trial court's denial of his motion for new trial without an evidentiary hearing was an abuse of discretion. Because the timing of the State's disclosure did not violate Carman's rights and the trial court did not abuse its discretion in denying him an evidentiary hearing, we will affirm the trial court's judgments.

## I. BACKGROUND

Carman and I.L.[1] were neighbors and family friends. The families vacationed together, I.L. considered Carman's son a close friend and "like a brother," and she spent time at Carman's house with Carman's son. I.L. and Carman each had the other's phone number, and they texted sporadically in the years before the July 2022 offense. I.L. characterized Carman's texts as having a "cool dad" vibe.

---

[1]We identify persons who were minors during the underlying case only by initials. *See* Tex. R. App. P. 9.10(a). On the date of the offense, I.L. was 16 years old.

In July 2022, Carman texted I.L., saying, "I better not see you in those little ass shorts again[,] woman . . . You going to get some old dude arrested for looking. Cover up them cheeks[.]" He texted, "I will find my paddle. Awful feisty tonight." He then sent her an animated GIF of a drawing that appeared at first to be a penis but resolved into a smiling face. He continued, "You a smart one. [Not] much passes over your head. Why do I feel like I'm going to get [in trouble] talking to my bestie one day[?] Send me one thing you want this summer." He told her to keep the conversation between the two of them. He offered to purchase $800 shoes for her, and said "You my girl . . . [The shoes] will look good with those short booty shorts you be wearing around." He recounted an event in which he saw her bent over a counter in his bathroom, saying he "thought [he] was about to go to jail," and "it kinda seemed intentional."

He then sent her a receipt for the purchase of the shoes and asked, "What do I get in return?" She replied, "[A] high five and a crumbl cookie[.]"[2] He replied, "They are ordered[,] babe. Wow a high five and a cookie. I'm excited." He told her, "You need to wear those short little hoochie shorts when you come try them on[.]" She demurred. He told her not to mention where the shoes came from and offered, if she were "extra good," to buy her something else when school started.

---

[2]Crumbl is a franchised chain of bakeries. *See Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 835 (E.D. Cal. 2024).

Then, he asked her if his son was a virgin and what his son's sexual experience may be, which girls might be his son's possible partners, whether I.L. was a virgin, and who else in her grade was not. He directly asked her if she had tried sex, which she denied.

Carman told I.L. to delete his texts, "like pronto." I.L. was confused, shocked, and scared by this exchange of text messages and found them to be inappropriate.

Soon after, during a family vacation, I.L. asked a friend for advice about the texts. I.L. told her friend she found the texts disgusting and that she did not feel comfortable going to Carman's house "ever again." I.L.'s friend told her to tell her parents, and, when she did not, the friend's mom told I.L.'s parents. I.L.'s parents reported the messages to the police and gave I.L.'s phone to City of Mansfield police detective Jorge Ramirez.

Some days later, Detective Ramirez continued the text conversation with Carman, using I.L.'s phone pretending to be her. Detective Ramirez began by asking about the shoes Carman had ordered, saying, "Guess you're not that motivated to see me in my shorts again."[3] Carman said he "definitely" was interested.

Carman asked for a photograph of I.L. in short shorts and implied that he was sexually excited by the idea. He sent two photographs of his erect penis, first inside

---

[3]At trial, Carman's counsel cross-examined Detective Ramirez about entrapment and whether these first text messages he sent to Carman might have constituted initiation or escalation of a sexual conversation.

his pants and then exposed, and discussed having sex with I.L. They arranged for him to come to her home while her parents were away, arranging for swimming and sex. Carman stated that he would bring condoms. Detective Ramirez told Carman to come around the side of the house to avoid the cameras on the front.

Using a remote-controlled drone aircraft, police took video footage of Carman returning home in his truck, walking down the street from his house to I.L.'s, and then going around the side of her house to the back as instructed in the text messages. He was arrested in the backyard. During the arrest, Carman insisted that it was his son who had been texting I.L. and that Carman came to the house only to tell I.L.'s parents about what was happening. After searching Carman, the police found he carried only a cell phone and a condom.[4]

A grand jury indicted Carman for two felony counts of online solicitation of a minor. Tex. Penal Code Ann. § 33.0211(b)(2), (c).

Carman did not request a pretrial hearing to determine matters related to entrapment but pursued the defense during trial. *See* Tex. Code Crim. Proc. Ann. art. 28.01, § 1(9). During voir dire, he asked the jury whether they believed "sting" operations might be considered entrapment and asked about jurors' general thoughts about entrapment. Carman's trial counsel began his opening statement by saying that the case was about three things: "The overexertion of law enforcement power,

---

[4]There was later testimony that, besides these two items, Carman carried an ecigarette and his keys.

entrapment that they used in order to push Mr. Carman over the edge, and persuasion that they used to do it."

Among other witnesses, the State called expert witness Lindsey Dula, director of program services for Alliance for Children (AFC), who testified that text messaging between Carman and I.L. in the two years prior to his arrest showed "grooming" behaviors. She testified that the "grooming" process creates access to children and opportunities to commit sexual abuse. She did not testify during the punishment phase of the trial.

During closing, Carman's trial counsel expressly raised entrapment, questioned whether Detective Ramirez's text messages "changed the pace and the tone of that conversation," and argued that the text messages were "overly persuasive" and that Detective Ramirez had "manufactured this situation."

On February 8, 2024, the jury convicted Carman of both counts and assessed his punishment for the two offenses at five-and-one-half years' incarceration and two years' incarceration, respectively, to be served concurrently.

Carman filed a notice of appeal on February 12 and motion for new trial on February 13. On March 11, upon retaining new counsel, Carman filed an amended motion for new trial. The amended motion raised ineffective assistance, alleging that Carman's trial counsel had failed to reasonably investigate the facts and law of the case, that his counsel's trial strategy pursuing entrapment was objectively unreasonable because it was not available under the facts of the case and was pursued in lieu of an

attack on the requisite element of intent, and that his trial counsel's failure to investigate the case or identify or pursue other defenses undermined the outcome of the trial. The court set the amended motion for a March 27 hearing, but it then denied the motion before the hearing.

Carman filed a post-conviction request for discovery on April 30. On May 15,[5] the State disclosed that, on February 26, Dula had resigned her position in lieu of termination for violation of AFC's internal policies and that AFC had notified the State of the resignation on February 29. In its disclosure to Carman, the State described in detail the circumstances of Dula's resignation and provided copies of her personnel files.

According to the files, Dula had sent a PowerPoint presentation containing sensitive information and strategies to another agency after manipulating the presentation to remove AFC's name and replace it with another agency's name and with Dula's. Dula had shared the presentation and was paid for sharing it, and she did not disclose the fact that she was paid for the presentation when a supervisor counseled her on February 21 about having shared it. AFC notified Dula that her use of presentation materials in paid presentations to outside agencies and her failure to disclose the violation left her with the option to resign or be terminated.

---

[5]The State's disclosure was 97 days after imposition of judgment on Carman; it is undisputed that this was beyond the deadline to file or amend a motion for new trial. *See* Tex. R. App. P. 21.4.

## II. DISCUSSION

On appeal, Carman raises issues with the timing of the State's disclosure of Dula's resignation and with the court's failure to hold an evidentiary hearing on his amended motion for new trial.

### A. THE STATE'S ONGOING DUTY TO DISCLOSE

In two issues, Carman argues that the State violated its ongoing duty to disclose evidence after trial under Chapter 39 of the Code of Criminal Procedure and that the delay in disclosure violated the duty to disclose favorable evidence.

### 1. Applicable law as to disclosure under Article 39.14

In a criminal prosecution, the State has duties to disclose certain information to a defendant. *See* Tex. Code Crim. Proc. Ann. art. 39.14. Initially, as soon as practicable after receiving a timely request from a defendant, the State must produce evidence "material to any matter involved in the action" that is in its possession. *Id.* art. 39.14(a). Regardless of whether a request has been made, the State has a duty to disclose "any exculpatory, impeachment, or mitigating . . . information in the possession, custody, or control of the [S]tate that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." *Id.* art. 39.14(h).

The State also has an ongoing duty of disclosure that does not end with a jury's verdict. *Id.* art. 39.14(k). If, at any time "before, during, or after trial," the State discovers any additional "document, item, or information required to be disclosed

8

under [article 39.14] Subsection (h)," the State must promptly disclose its existence to the defendant or the court. *Id.*

The standards for disclosure under subsections (a) and (h) are different. Subsection (a) requires the State to disclose any "material evidence" upon the defendant's timely request for information. *Id.* art. 39.14(a). In the context of subsection (a), "material" is synonymous with "relevant" and is "broad in its applicability." *Watkins v. State*, 619 S.W.3d 265, 278–279 (Tex. Crim. App. 2021). Subsection (h) requires the State to disclose "any exculpatory, impeachment, or mitigating" evidence that "tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." Tex. Code Crim. Proc. Ann. art. 39.14(h). The State's duty under subsection (h) is to disclose "any relevant evidence that tends to negate guilt or mitigate punishment regardless of whether the evidence is 'material' under *Brady v. Maryland*." *Watkins*, 619 S.W.3d at 277.

To determine whether given information would "tend to negate the guilt of the defendant or would tend to reduce the punishment," we must examine the offenses for which the defendant was charged. *See* Tex. Code Crim. Proc. Ann. art. 39.14(h). Carman was charged with two counts of online solicitation of a minor under Penal Code Section 33.021. Under that section, it is an offense for a person who is 17 years of age or older, (1) with the intent to commit the offense of indecency with or sexual assault of a child, by text message, to intentionally distribute sexually explicit material to a minor; or (2) by text message, to knowingly solicit a minor to meet the person

9

with the intent that the minor will engage in sexual contact or sexual intercourse with the person. Tex. Penal Code Ann. § 33.021(b)(2), (c). The offense of distribution of explicit material to a minor under subsection (b)(2) is punishable by a fine of not more than $10,000 and by not less than 2 or more than 10 years' confinement. The offense of solicitation of a minor with intent to engage in sexual contact under subsection (c) is punishable by a fine of not more than $10,000 and by not less than 2 or more than 20 years' confinement.

### 2. The State's duty to disclose Dula's resignation under Article 39.14 in time for Carman to amend his motion

Carman complains that the State did not make prompt disclosure of the fact that Dula, an expert witness, resigned her employment in lieu of termination due to violations of AFC's ethics and fraud policies sufficiently early that he could raise the issue in his motion for new trial.

Certainly, misconduct of an expert witness may be so egregious or deficient as to negate the guilt or tend to reduce the punishment of a defendant and so become subject to disclosure under subsection (k). *See, e.g., Ex Parte Coty*, 418 S.W.3d 597, 599 (Tex. Crim. App. 2014) (describing forensic examiner's termination from employment for misconduct and fraud in analyzing evidence, casting doubt on reliability of results of all testing conducted by the witness and so tending to negate guilt). Typically, such issues would be raised in a post-conviction petition for a writ of habeas corpus. *Id.* at 602. But whether such issues could have been raised in a motion for new trial must

be viewed in light of the rules governing when a trial court may grant a motion for new trial.

To obtain a new trial on the basis of newly discovered evidence, a defendant must satisfy a four-prong test:

> (1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;
>
> (2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;
>
> (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and
>
> (4) the new evidence is probably true and will probably bring about a different result in a new trial.

*State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017); *see also* Tex. Code Crim. Proc. Ann. art. 40.001.

A jury convicted Carman on February 8, 2024. The State disclosed Dula's personnel files 97 days later, on May 15, well beyond the thirty-day deadline for Carman to file or amend a motion for new trial. *See* Tex. R. App. P. 21.4. Had Dula's alleged personnel violations tended to negate Carman's guilt or reduce his punishment, they may have been subject to disclosure under subsection (h). *See* Tex. Code Crim. Proc. Ann. art. 39.14(h). If the State was not required to disclose the evidence under that subsection, we need not address whether disclosure was "prompt" under the statute. *See id.*

11

The late-disclosed evidence in this case does not tend to negate Carman's guilt or reduce his punishment. Dula resigned after she was alleged to have violated AFC's internal policies against providing AFC's intellectual property to another agency and to have failed to self-report being paid for presentations using that material. Dula was not alleged to have falsified any data or engaged in any professional misconduct related to evidence against any defendant, including Carman. *But cf. Coty*, 418 S.W.3d at 598–600 (holding that laboratory technician's widespread professional misconduct by "using the evidence in one case to support the evidence in another case" resulted in rebuttable presumption of due process violation in other cases). Her alleged misconduct does not relate to her professional experience or expertise, any subject upon which she testified at Carman's trial, any element of either offense for which Carman was convicted, or appropriate punishment ranges for those offenses. *See Rodriguez v. State*, No. 01-17-00731-CR, 2018 WL 6219609, at \*11 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, no pet.) (mem. op., not designated for publication) (holding professional misconduct resulting in resignation by an expert was irrelevant because it was unrelated to issues before the jury). Therefore, the facts surrounding the termination of her employment do not tend to negate Carman's guilt or reduce his punishment. *See id.*

But even if we were to assume that the State was required to disclose this evidence under Article 39.14(h) and that it failed to do so promptly, i.e., in time for Carman to raise it in his motion for new trial, he cannot show harm. The trial court

12

could not have properly relied upon the information to grant a new trial because the reasons for Dula's resignation constituted impeachment evidence, as Carman concedes in his brief.

The new evidence regarding Dula's employment is merely impeaching evidence intended to "dispute, disparage, deny, or contradict" her testimony. *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). Because the evidence fails the third prong of the new-trial test, the trial court would have erred had it granted a new trial. *See Brown v. State*, No. 2-03-289-CR, 2004 WL 1944722, at *7 (Tex. App.—Fort Worth Aug. 30, 2004, no pet.) (mem. op., not designated for publication) (holding that newly discovered evidence that would only have diminished a witness's credibility was not sufficient to grant a new trial); *Bridges v. State*, No. 2-03-011-CR, 2003 WL 21986332, at *2 (Tex. App.—Fort Worth Aug. 21, 2003, pet. ref'd) (per curiam) (mem. op., not designated for publication) (holding that impeachment evidence that only diminished credibility but did not indicate the witness was mistaken about a material matter was not sufficient to grant a new trial).

Because the evidence of Dula's resignation would have constituted an impermissible basis for the trial court to have granted a new trial had it been made the basis of such a motion, we hold that the timing of the State's disclosure did not harm Carman and so overrule his first issue. *See* Tex. R. App. P. 44.2(b).

13

### 3. Due process standard

Aside from its statutory duty, the State has an affirmative and ongoing duty to disclose evidence favorable to the accused and material to his guilt or punishment under the due process clause of the Fourteenth Amendment. *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S. Ct. 1194, 1196–97 (1963). This duty attaches with or without a request for the evidence. *See United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985).

The remedy for a due process violation under *Brady* is a new trial. *See Pena v. State*, 353 S.W.3d 797, 815 (Tex. Crim. App. 2011). Unlike Article 39.14, *Brady* requires a new trial for failure to disclose impeachment evidence if it is "material." *Pena*, 353 S.W.3d at 811; *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999); *Michaelwicz v. State*, 186 S.W.3d 601, 613 (Tex. App.—Austin 2006, pet. ref'd). Evidence is "material" under *Brady* if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Little*, 991 S.W.2d at 866. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense." *Pena*, 353 S.W.3d at 812. The determination usually involves balancing the strength of the exculpatory evidence against the evidence supporting the conviction. *Hampton v. State*, 86 S.W.3d 603, 613 (Tex. Crim. App. 2002).

### 4. The State's duty to disclose the resignation under *Brady* in time for Carman to amend his motion

Dula's resignation would have constituted an impermissible basis for the trial court to have granted a new trial under *Brady* even had the State disclosed it in time for Carman to have amended his motion for new trial.

The favorable impeachment evidence at issue is Dula's personnel records related to her resignation. Dula resigned in lieu of termination after she used her employer's materials for a paid, external presentation. Each of her alleged violations of AFC's code of conduct related directly to this behavior. None of the allegations involved Dula's credentials or expertise or alleged that she falsified information that was used against Carman or that demonstrated unreliability as to any evidence against him. *See Coty*, 418 S.W.3d at 599, 606; *Wilks v. State*, No. 05-18-00184-CR, 2019 WL 2498681, at *7 (Tex. App.—Dallas June 17, 2019, pet. ref'd) (mem. op., not designated for publication) (finding that evidence of unrelated policy violations by witness did not call into question witness's testimony in case under review).

Because the challenged evidence does not undermine the evidence supporting conviction and the remaining evidence supporting conviction was strong, we hold that the evidence was not material under *Brady*. *See Hampton*, 86 S.W.3d at 612–13. Because it was not material, the trial court would have erred if it had granted a new trial on that basis, and so the timing of the disclosure did not harm Carman. *See id.* We overrule his second issue.

15

**B. DENIAL OF EVIDENTIARY HEARING ON MOTION FOR NEW TRIAL**

In his third issue, Carman argues that the trial court erred by denying him an evidentiary hearing on his motion for new trial based on his claim that his trial counsel performed ineffectively by failing to raise entrapment at a pretrial hearing.

### 1. Applicable Law

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000). The two prongs of *Strickland* need not be analyzed in a particular order, and if a defendant fails to make the required showing in one, we need not address the other. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

A defendant may raise an ineffective assistance of counsel claim in a motion for new trial. *Smith v. State*, 286 S.W.3d 333, 341 (Tex. Crim. App. 2009). To obtain an evidentiary hearing, the movant must allege sufficient facts not determinable from the record from which a trial court could reasonably conclude not only that counsel's

performance was deficient but also that such deficiency prejudiced the defense. *Id.* at 338–41. To show that his trial counsel was deficient, a defendant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms. *Id.* at 340. To show prejudice from the alleged deficiency, a defendant must show that there is a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

Because an evidentiary hearing on a motion for new trial is not an absolute right, we review a trial court's refusal to hold an evidentiary hearing under an abuse of discretion standard. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). When an appellant raises a claim of ineffective assistance in a point or issue complaining about the denial of a hearing on a motion for new trial, we view the evidence in the light most favorable to the trial court's ruling and will reverse only if no reasonable view of the record could support the ruling. *Fulton v. State*, No. 02-19-00227-CR, 2020 WL 3969851, at *2 (Tex. App.—Fort Worth June 11, 2020, no pet.) (mem. op., not designated for publication) (citing *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017)).

### 2.    Preservation

The State first argues that although Carman raised several grounds in his motion for new trial, he did not place before the trial court the issue of his trial counsel's failure to raise entrapment in a pretrial hearing, and so the argument is not

17

preserved for our review.[6]  But because Carman did raise this argument before the trial court, this issue is preserved for our review.

Carman's amended motion for new trial raised issues with his trial counsel's pursuit of the defense of entrapment, particularly his alleged failure to "advance the defense either before trial or in front of the jury."  Carman further states in that motion that his trial counsel did not request a pretrial hearing to request the defense. Based on the contextual totality of the motion, we cannot say that Carman failed to raise this argument with the trial court.  *See Robinson v. State*, 16 S.W.3d 808, 809–11 (Tex. Crim. App. 2000).

### 3.     Whether Carman would have been prejudiced assuming his counsel had performed deficiently

Carman argues that the trial court erred by denying him a requested evidentiary hearing because his allegations of ineffective assistance cannot be determined from the record.  In support of this proposition, Carman attached an affidavit to his amended motion for new trial in which he averred that his trial counsel did not raise entrapment in a pretrial motion as permitted by the Code of Criminal Procedure[7] or

---

[6]To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling.  Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021).

[7]Carman's amended motion for new trial raised several other grounds.  Because his appellate brief addresses only failure to raise entrapment in a pretrial hearing, only that ground is properly before us.  *See* Tex. R. App. P. 38.1(i); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005) (holding an appellant waives an issue by not

18

request a pretrial hearing to address it. *See* Tex. Code Crim. Proc. Ann. art. 28.01, § 1(9) ("The court may set any criminal case for a pretrial hearing . . . to determine . . . entrapment."). In that respect, Carman is correct. The record establishes and the State does not dispute that Carman's trial counsel did not raise entrapment at a pretrial hearing.

But the analysis does not end there. Even presuming that testimony at an evidentiary hearing would have demonstrated that Carman's trial counsel's failure to request a pretrial hearing on entrapment demonstrated inarguable deficiency,[8] because the trial court could not have granted pretrial dismissal based on entrapment, we cannot say that such a deficiency prejudiced his defense.

The presentation of an entrapment defense at a pretrial hearing, although "permissible," is "generally undesirable because it permits the piecemeal trial of a criminal case." *Hernandez v. State*, 161 S.W.3d 491, 497–98 (Tex. Crim. App. 2005) (quoting *Bush v. State*, 611 S.W.2d 428, 432 n.1 (Tex. Crim. App. 1981) (op. on reh'g)). Because the affirmative defense of entrapment is intertwined with intent and typically based on credibility determinations, it is generally considered an appropriate issue for the jury. *Id.* A trial court may only determine entrapment "as a matter of law" at the

---

providing supporting argument, analysis, and citations to authorities and to the record in his brief).

[8]For example, Carman suggests that his trial counsel was not aware that he could request such a hearing.

pretrial stage when the defendant first establishes beyond a reasonable doubt that the facts underlying the entrapment defense are undisputed. *Id.*

To raise the defense of entrapment, a defendant must plead that he "engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense." Tex. Penal Code Ann. § 8.06(a). "Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment." *Id.* The trial court may only grant a pretrial dismissal based on entrapment as a matter of law if the undisputed facts do not contradict any element of the defense. *Hernandez,* 161 S.W.3d at 497.

Here, because the underlying facts relating to the defense of entrapment were disputed, the trial court could not have granted dismissal as a matter of law. For example, in body-camera video of his arrest that was introduced at trial, Carman denied that he engaged in the conduct charged, stating that his son had sent the texts to I.L. And at trial, Detective Ramirez testified that he did not coerce or force Carman to respond as he did and that once the detectives "believe that the subject brought something up, it kind of opens that door for us to be able to communicate with them in that capacity." According to Detective Ramirez's testimony, he only provided Carman an opportunity to commit a crime.

Because the evidence would not have been undisputed, Carman has not demonstrated that the outcome of the case would have been different—that the trial court could have granted dismissal as a matter of law. Carman has thus failed to

satisfy his burden under the second prong of the *Strickland* test. *See Hernandez*, 161 S.W.3d at 497. Because Carman makes an insufficient showing under this component, we need not address the other. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. And because Carman did not carry his burden under *Strickland*, we hold that the trial court did not abuse its discretion by declining to hold an evidentiary hearing on his motion for new trial. We overrule Carman's third issue. *See Hernandez*, 161 S.W.3d at 497.

## III. CONCLUSION

Because the State's delay in disclosing Dula's resignation did not harm Carman and because the trial court did not abuse its discretion by declining to hold an evidentiary hearing on Carman's motion for new trial, we overrule each of Carman's three issues and affirm the trial court's judgments.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 24, 2025

21